609 A.2d 483

LEE BREEDEN, PLAINTIFF–APPELLANT, v. NEW
JERSEY DEPARTMENT OF CORRECTIONS,
DEFENDANT–RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued March 24, 1992—Decided June 12, 1992.

Before Judges ANTELL, BAIME and THOMAS.

*J. Michael Blake*, Assistant Deputy Public Defender, argued the cause for appellant (*Wilfredo Caraballo*, Public Defender, attorney; *J. Michael Blake*, of counsel and on the brief).

*Deborah Berk*, Deputy Attorney General, argued the cause for respondent (*Robert J. Del Tufo*, Attorney General, attorney; *Joseph L. Yannotti*, Assistant Attorney General, of counsel; *Brett D. Rickman*, Deputy Attorney General, on the brief).

The opinion of the court was delivered by

BAIME, J.A.D.

While serving a sentence in New Jersey, appellant escaped and fled to California where he committed another offense. Following his apprehension and conviction in that state, the Superior Court of California imposed a sentence of three years and directed that it be served concurrent to the uncompleted portion of appellant's New Jersey prison term. Despite repeated requests by the California Department of Corrections, New Jersey prison officials refused to accept appellant's return to this state for service of the balance of his New Jersey sentence. Instead, appellant was compelled to serve the entirety of his California sentence before he was returned to this state to complete the unexpired portion of the New Jersey prison term. The New Jersey Department of Corrections (DOC) subsequently denied appellant's request for credit for the time spent in serving the California sentence. In reaching this conclusion, the DOC reasoned that it had no obligation to give extraterritorial effect to the California judge's direction that the California sentence be served concurrent to the custodial term previously imposed in New Jersey. We reverse.

We hold that principles of comity impel the DOC to honor the direction of a judge of another state that a sentence imposed in the foreign jurisdiction be served concurrent to a prison term previously set in New Jersey. The DOC can either accept the transfer of the prisoner to this state for service of his New Jersey sentence or grant time credit for the period served in the foreign jurisdiction. Either way, New Jersey has no interest in blithely ignoring the lawful orders of the judiciary of another jurisdiction.

The facts are not in dispute. On August 4, 1981, appellant was sentenced in New Jersey to an indeterminate term not to exceed ten years upon his conviction for armed robbery. He was paroled on May 17, 1983. One day later, he was arrested and returned to custody. Appellant was subsequently convicted of aggravated assault and terroristic threats and sentenced to ten years. The prior parole was revoked in August 1984 and appellant received a two year parole violation term on the first conviction.

On February 3, 1985, appellant escaped from the Marlboro Camp at Marlboro State Hospital where he was serving his sentence. An arrest warrant was issued on February 4, 1985 by the Superintendent of the New Jersey State Prison. Appellant remained at large for approximately two months.

On March 23, 1985, appellant was arrested in California for various disorderly persons offenses. He received a 25 day county jail sentence on those charges. Appellant completed his sentence on April 16, 1985, but was held until May 29, 1985, pursuant to an interstate detainer. Therefore, the time spent in county jail in California solely on the New Jersey detainer totalled 42 days. On May 29, 1985, appellant escaped from extradition officers in Oregon while being transported back to New Jersey.

On August 17, 1985, appellant was arrested in California for armed robbery. After pleading guilty to the charge, he was

sentenced to three years to be served concurrent to any prior uncompleted sentence.

Appellant was then indicted in New Jersey for escape. On March 31, 1986, he filed a request to be tried on the escape charge. Appellant was extradited to New Jersey on April 11, 1986. On June 10, 1986, he pleaded guilty to escape and was sentenced on July 17, 1986 to a four year consecutive sentence. On August 12, 1986, appellant was returned to California to complete his sentence there.

After his return to California, appellant requested that state's prison officials to transfer him to New Jersey in order to serve the unexpired portion of his New Jersey sentence. On October 29, 1986, California made appellant available for transfer to New Jersey pursuant to *In re Stoliker*, 49 *Cal.*2d 75, 315 *P.*2d 12 (1957). In *Stoliker*, the California Supreme Court held that where a California sentence is to run concurrent to a term imposed in another jurisdiction, the sentence may be served in the other state. The DOC responded on November 12, 1986, and declined assumption of custody until appellant had completed his term in California. In its letter, the DOC observed:

It is the policy of this Department that [appellant] cannot continue service of the unserved portion of his New Jersey sentence until such time as he has completed service of any duly imposed sentence.... As a result, Monmouth County will assume responsibility for returning [appellant] to New Jersey upon his release in California.

Appellant then filed a petition for a writ of *habeas corpus* in California. The California court denied the petition, holding it has "no authority to order New Jersey to accept time credits earned on the California sentence to shorten [his] incarceration in New Jersey."

On May 8, 1987, the California Department of Corrections notified New Jersey that appellant would be paroled on June 28, 1987, and inquired when New Jersey would assume custody. Appellant was subsequently extradited to New Jersey to complete service of his sentence here. Thereafter, appellant sought

credit against his New Jersey sentence for the time he served in California.

On March 31, 1988, Rise S. Dawson, Supervisor of the Fugitive/IAD unit of the New Jersey Department of Corrections, replied to a letter from appellant. In relevant part, the letter stated:

> Please be advised that without a court order from a New Jersey court directing this department to give you credit for time on your California sentence, you will only be entitled to that portion of your time spent out of state when you were held on our interest only.
>
> The offer of custody from California stems from a California court decesion (sic), *In re Stoliker* and is binding on California only. New Jersey is under no legal obligation to accept an inmate under those circumstances. Nor is New Jersey under legal obligation to give you concurrency of sentence on a California commitment (sic) ordered by a California judge.
>
> The policy of this department regarding the tolling of time due to an escape is in fact administrative policy and therefore administrative law, legally binding and effectuated unless or until New Jersey courts dictate otherwise. Should you wish to pursue this matter, the courts are the appropriate arena.

Appellant was also advised he would receive credit for the 42 days in 1985 he spent in the Santa Clara County jail while awaiting extradition to New Jersey. Dawson then wrote to the Senior Classification Officer at Trenton State Prison to ensure appellant received credit for that time. This determination was ultimately sustained by the Commissioner of the DOC. This appeal followed.

The novel question presented is whether New Jersey should give effect to the direction of another jurisdiction that its sentence be served concurrent to a term previously imposed in this state. The DOC contends that there is no statute or regulation compelling New Jersey to give full faith and credit to a criminal judgment obtained in another state. We agree that the sentencing provisions of the Code of Criminal Justice are inapplicable. Although *N.J.S.A.* 2C:44–5d confers absolute discretion in the courts to determine whether multiple terms of imprisonment are to run concurrently or consecutively, the territorial reach of this section is confined to New Jersey. Moreover, we have found no other statute or regulation which

compels New Jersey correctional officials to effectuate an order of a foreign jurisdiction that a sentence imposed there be served concurrent to a term previously set in this state.

This much conceded, we are convinced that the DOC's argument misses the mark. The question is not whether California can foist its criminal judgments on New Jersey. Instead, the issue is whether any legitimate New Jersey interest would be served by refusing to honor the terms of the sentence imposed by the California court for a crime committed in that jurisdiction.

■ We begin with the constitutional prescription that "Full Faith and Credit shall be given in each State to the public Acts, Records, and Judicial Proceedings of every other State." *U.S. Const.*, art. IV, § 1. The purpose of the full faith and credit clause was to alter the fragile relationship between the states as independent sovereigns and to integrate them into a single nation. *Milwaukee Cty v. M.E. White Co.*, 296 *U.S.* 268, 276–77, 56 *S.Ct.* 229, 233–34, 80 *L.Ed.* 220, 228 (1935). The language of the clause seems all-embracing. However, almost from its inception, the clause was construed to except penal laws and judgments from its reach. *See The Antelope*, 23 *U.S.* 66, 123 (10 Wheat.), 6 *L.Ed.* 268, 282 (1825). Thus, a state has no constitutional obligation to enforce a criminal judgment entered in another jurisdiction.

■ This does not mean, however, that each state's criminal laws and penal judgments are to be hermetically sealed. In a variety of factual settings and legal contexts, our courts have often chosen as a matter of comity to give recognition to the criminal laws and judgments of other states. *See, e.g., State v. Robbins*, 124 *N.J.* 282, 293, 590 *A.*2d 1133 (1991); *Philadelphia v. Austin*, 86 *N.J.* 55, 63–64, 429 *A.*2d 568 (1981); *Russillo v. Fauver*, 225 *N.J.Super.* 308, 311, 542 *A.*2d 481 (App.Div.1988). Comity is the "basis for voluntary enforcement or recognition by one state of the judicial proceedings of a sister state." *Philadelphia v. Austin*, 86 *N.J.* at 63–64, 429 *A.*2d 568; *see*

*also Mast, Foos & Co. v. Stover Mfg. Co.,* 177 *U.S.* 485, 588–89, 20 *S.Ct.* 708, 710, 44 *L.Ed.* 856, 858 (1900). Our Supreme Court has said that "[c]omity is not a binding obligation," but rather "a courtesy voluntarily extended to another state." *Philadelphia v. Austin,* 86 *N.J.* at 64, 429 *A.*2d 568. Its obligation is not imperative. If it were, "the indiscreet action of one court might become a precedent, increasing in its weight with each successive adjudication, until the whole country was tied down to an unsound principle." *Mast, Foos & Co. v. Stover Mfg. Co.,* 177 *U.S.* at 488, 20 *S.Ct.* at 710, 44 *L.Ed.* at 858. It is not a rigid rule of law, "but one of practice, convenience, and expediency." *Ibid.* Considerations of comity persuade, but do not command. The doctrine declares not how a case shall be decided, but how it may with propriety be fairly resolved. *Ibid.*

■ Against this backdrop, we perceive no sound reason to refuse to give effect to the terms of the California sentence. The crime was committed in California, not New Jersey. Appellant was sentenced in accordance with California laws, not those of this state. Deference to the California judge's clearly articulated desire that the sentence be served concurrent to that previously imposed here does not contravene or offend any legitimate interest or public policy of New Jersey. While our Supreme Court has said that "there can be no free crimes" in a system for which the punishment shall fit the offense, *State v. Yarbough,* 100 *N.J.* 627, 643, 498 *A.*2d 1239 (1985), *cert. denied,* 475 *U.S.* 1014, 106 *S.Ct.* 1193, 89 *L.Ed.*2d 308 (1986), it has also emphasized that this is but one of a number of considerations in deciding whether multiple sentences are to run concurrently or consecutively. *Id.* at 644–45, 498 *A.*2d 1239. Simply stated, we discern no valid reason to subvert the expressed will of the California courts. Although we have found no reported New Jersey opinion dealing precisely with this issue, several of our prior decisions clearly foreshadowed the result we reach here. *See Bonomo v. N.J. State Parole Bd.,* 104 *N.J.Super.* 226, 234–35, 249 *A.*2d 611 (App.Div.1969); *State v. Grant,* 102 *N.J.Super.* 164, 170, 245 *A.*2d 528 (App.Div.1968).

The DOC's reliance on *State v. Hugley*, 198 *N.J.Super.* 152, 486 *A.*2d 900 (App.Div.1985) is clearly misplaced. There, we confronted the issue of whether "gap time" credits should be awarded a defendant who escaped from a New Jersey prison and committed a crime in another jurisdiction. After the defendant was sentenced in the other state, New Jersey located him and lodged a detainer but did not gain custody for a considerable period. *Id.* at 155, 486 *A.*2d 900. Upon being returned to New Jersey, defendant received a three year sentence concurrent to that imposed in the foreign jurisdiction. The question before us was whether defendant was entitled to "gap time" credits pursuant to *N.J.S.A.* 2C:44–5b(2). We held that the defendant's escape and flight to another jurisdiction barred him from being credited with the time spent in prison in the other state. In reaching this conclusion, we stressed that "gap time" credits are "intended to deter a prosecutor from 'dragging his heels' in pursuing an indictment when he knows that an inmate is available for a final disposition of an offense." *Id.* at 158, 486 *A.*2d 900. We said that this consideration is not applicable where the "offender escapes from New Jersey" and "the prosecutor is unable to move forward on an indictment." *Ibid.* We noted that "[t]his situation differs significantly from the obviously unjust scenario the statute was designed to prevent, *i.e.*, a prisoner in a New Jersey jail who loses his opportunity for a concurrent sentence simply because a prosecutor fails to proceed against him for an offense committed earlier." *Ibid.* Because an out-of-state prisoner may resort to the safeguards provided by the Interstate Agreement on Detainers (*N.J.S.A.* 2A:159A–1) and thereby compel New Jersey officials to bring him to trial in a timely fashion, we observed that he could not "lose his opportunity for a concurrent sentence" by reason of the dilatory tactics of a county prosecutor. *Ibid.*

Unlike *Hugley*, we are not concerned here with the arcane subject of "gap time" credits. *See Richardson v. Nickolopoulos*, 110 *N.J.* 241, 540 *A.*2d 1246 (1988); *State v. Benedetto*, 221 *N.J.Super.* 573, 535 *A.*2d 525 (App.Div.1987), *certif. denied*, 111

*N.J.* 559, 546 *A.*2d 491 (1988); *State v. Lawlor,* 222 *N.J.Super.* 241, 536 *A.*2d 766 (App.Div.1988). Rather, we deal with an issue that "is a product of the heterogeneity that marks our system of federalism." *See State v. Engel,* 249 *N.J.Super.* 336, 365, 592 *A.*2d 572 (App.Div.1991). Although a state may be constitutionally free to ignore the penal judgments and proceedings of its sister states, each is not a water-tight compartment. Absent some important countervailing policy consideration, cooperation between the states should be encouraged.

The effect of the DOC's policy is to make concurrent sentences consecutive and, thereby, to render nugatory a significant element of a criminal judgment lawfully entered by a judge of another state. We see no reason to alter the course taken by the California court. The record is devoid of anything to suggest that California wished to "warehouse" its prisoner in New Jersey. Even if this were the case, however, the DOC's action would not serve to cure such an intrusion. By compelling appellant to complete his California sentence before serving the unexpired portion of his New Jersey prison term, the DOC merely delayed the inevitable without any countervailing benefit.

Of course, appellant's plight does not evoke our sympathy. Despite repeated incarcerations, his life of crime apparently continues unabated. However, appellant was separately punished for each crime committed in New Jersey. The consecutive New Jersey sentences imposed by our courts served to punish appellant for the crimes committed in this state. *State v. Yarbough,* 100 *N.J.* at 643, 498 *A.*2d 1239. As to the crime committed in California, we merely honor that state's penal judgment by giving recognition to the full term of the sentence imposed.

Reversed.