625 A.2d 1125

LEE BREEDEN, APPELLANT–RESPONDENT, v. NEW JERSEY DEPARTMENT OF CORRECTIONS, RESPONDENT–APPELLANT.

Argued March 2, 1993—Decided June 21, 1993.

458

*Madeleine W. Mansier,* Deputy Attorney General, argued the cause for appellant (*Robert J. Del Tufo,* Attorney General of New Jersey, attorney; *Joseph L. Yannotti,* Assistant Attorney General, of counsel).

*J. Michael Blake,* Assistant Deputy Public Defender, argued the cause for respondent (*Zulima V. Farber,* Public Defender, attorney).

The opinion of the Court was delivered by

O'HERN, J.

This case concerns the question whether another state's prison sentence, expressly intended to be concurrent with a prior uncompleted New Jersey sentence, is to be credited as time served against the uncompleted New Jersey sentence even though served in the foreign state. The New Jersey sentence had been interrupted when the offender escaped to a foreign state and committed a crime there that resulted in the offender's conviction and sentence in the foreign state. We hold that the determination whether New Jersey sentences are consecutive or concurrent is primarily a judicial function. Sentencing principles as well as principles of comity and fairness should guide the New Jersey sentencing court in determining whether the penal and rehabilitative purpose of its original sentence

have been fulfilled by the imprisonment elsewhere. We reverse the judgment below, which would have required the Commissioner of Corrections (Commissioner) to credit administratively the time served elsewhere against the unexpired New Jersey term.

## I

The case arises from the efforts of Lee Breeden to escape confinement for his crimes. For convenience, we will omit many of the details of the case that are more fully set forth in the reported opinion of the Appellate Division, 258 *N.J.Super.* 252, 609 *A.*2d 483 (1992).

We start with Breeden's 1984 sentence in New Jersey for assault. Breeden was serving that sentence by working at the New Jersey State Hospital at Marlboro when he escaped from New Jersey's custody. He was eventually arrested in California on a disorderly persons offense, and after serving a short period of custody he was released to be returned to New Jersey on its detainer. Breeden managed to escape while being extradited to New Jersey. Within months, California arrested him again on an armed-robbery charge and sentenced him to three-years imprisonment. The California court made that sentence "concurrent with any prior uncompleted sentence(s)." While serving that term in California, Breeden requested to be returned to New Jersey to stand trial on his New Jersey escape charge. On June 10, 1986, he pled guilty in New Jersey to escape, and on July 17, 1986, he was sentenced to a four-year sentence. Defendant does not dispute that that sentence is consecutive to his original New Jersey sentence for assault.

After his August 12, 1986, return to California to complete the service of his three-year California sentence for armed robbery, Breeden asked the California Department of Corrections to transfer him to New Jersey to serve out the unexpired term of the New Jersey prison term concurrently with his California prison term. On October 29, 1986, the California

Department of Corrections offered to make Breeden available to the New Jersey Department of Corrections (New Jersey DOC, DOC, or the Department) for the transfer. The letter informed the Department that pursuant to *In re Stoliker*, 49 *Cal.*2d 75, 315 *P.*2d 12 (1957), if custody were accepted by New Jersey, Breeden would receive credit on his California term for time he served in New Jersey. If he were released on his New Jersey term prior to the expiration of his California term, he would be returned to California. The letter also suggested that the New Jersey DOC could decline custody but credit him on the New Jersey sentence for time served in California on the California term.

The New Jersey DOC wrote back on November 12, 1986, that

this department must decline assumption of custody until Subject has completed his term of imprisonment in California.

It is the policy of this department that Subject cannot continue service of the unserved portion of his New Jersey sentence until such time as he has completed service of any duly imposed sentence.

Breeden filed a state *habeas corpus* petition in Superior Court of California, presumably seeking release from custody in that state. That court denied the request and noted that "California has no authority to order New Jersey to accept time credits earned on the California sentence to shorten petitioner's incarceration in New Jersey."

California paroled Breeden on June 28, 1987, at which time he was returned to New Jersey. Breeden requested that the New Jersey DOC give him credit for the time served in California, but a Corrections official replied to Breeden:

Please be advised that without a court order from a New Jersey court directing this department to give you credit for time on your California sentence, you will only be entitled to that portion of your time spent out of state when you were held on our interest only.

The offer of custody from California stems from a California court decision, *In re Stoliker* and is binding on California only. New Jersey is under no legal obligation to accept an inmate under those circumstances. Nor is New Jersey under legal obligation to give you concurrency of sentence on a California commitment ordered by a California judge.

The policy of this department regarding the tolling of time due to an escape is in fact administrative policy and therefore administrative law, legally binding and effectuated unless or until New Jersey courts dictate otherwise. Should you wish to pursue this matter, the courts are the appropriate arena.

The letter noted that Breeden would be credited with the time in 1985 when he was held in California after serving time for the disorderly persons offense for return to New Jersey because at that time he was "held on New Jersey['s] interest only." The importance of the credit for the time served in California on the robbery charge is that it accelerates a prisoner's eligibility for parole under New Jersey law. Prisoners are eligible for parole after serving one-third of a sentence. *N.J.S.A.* 30:4–123.51.a.

Breeden appealed. After intermediate proceedings, the Appellate Division reversed the DOC's ruling and held that "principles of comity" impelled the Department "to honor the direction of a judge of another state that a sentence imposed in the foreign jurisdiction be served concurrent to a prison term previously set in New Jersey." 258 *N.J.Super.* at 254, 609 *A.*2d 483. The court further held:

The DOC can either accept the transfer of the prisoner to this state for service of his New Jersey sentence or grant time credit for the period served in the foreign jurisdiction. Either way, New Jersey has no interest in blithely ignoring the lawful orders of the judiciary of another jurisdiction. [*Ibid.*]

We granted the State's petition for certification, 130 *N.J.* 598, 617 *A.*2d 1220 (1992).

## II

We recently reviewed, in *State v. Robbins*, 124 *N.J.* 282, 590 *A.*2d 1133 (1991), and *In re Basto*, 108 *N.J.* 480, 531 *A.*2d 355 (1987), the general principles that apply to the relations between states with respect to the custody of prisoners. *Robbins* addressed the role of comity in the decision by a governor of an asylum state to deliver custody of a prisoner to serve a sentence in another jurisdiction before his sentence in New Jersey had expired. We reviewed the purposes of the extradition clause of the United States Constitution, noting that it " 'served

important national objectives of a newly developing country striving to foster national unity.' " *Robbins supra,* 124 *N.J.* at 286, 590 *A.*2d 1133 (quoting *Michigan v. Doran,* 439 *U.S.* 282, 288, 99 *S.Ct.* 530, 535, 58 *L.Ed.*2d 521, 527 (1978)). As implemented by the Federal Rendition Act, 18 *U.S.C.* §§ 3181–3195, governors of asylum states have "a mandatory duty to deliver up fugitives on proper demand." *Id.* 124 *N.J.* at 287, 590 *A.*2d 1133 (citing *Kentucky v. Dennison,* 65 *U.S.* (24 *How.*) 66, 16 *L.Ed.* 717 (1861), *overruled by Puerto Rico v. Branstad,* 483 *U.S.* 219, 107 *S.Ct.* 2802, 97 *L.Ed.*2d 187 (1987)). However, "rendition remains discretionary if the fugitive demanded is incarcerated in the asylum state for a violation of that state's laws." *Ibid.* (citing *Taylor v. Taintor,* 83 *U.S.* (16 *Wall.*) 366, 371, 21 *L.Ed.* 287, 290 (1873)). "In that situation, the governor's duty to extradite does not mature until punishment in the asylum state has been completed." *Id.* 124 *N.J.* at 288, 590 *A.*2d 1133 (citing *Nelson v. George,* 399 *U.S.* 224, 229 n. 6, 90 *S.Ct.* 1963, 1966–67 n. 6, 26 *L.Ed.*2d 578, 583 n. 6 (1970)). The governor of the asylum state may, as a matter of comity, choose to extradite incarcerated prisoners, and a prisoner " 'may not complain if one sovereignty waives its strict right to exclusive custody of him for vindication of its laws in order that the other may also subject him to conviction of [the] crime against it.' " *Ibid.* (quoting *Ponzi v. Fessenden,* 258 *U.S.* 254, 260, 42 *S.Ct.* 309, 310, 66 *L.Ed.* 607, 611 (1922)). We held in *Robbins:*

> "Inasmuch as it is impossible for a person to be in two places at the same time, where one owes penalties to two separate sovereigns, one sovereign must relinquish its claim and allow the other to exact its penalty first. * * * The order of punishment is a matter to be decided between the sovereigns—it is a matter of comity between them, and the decision arrived at is one over which the convict has no control." [*Robbins, supra,* 124 *N.J.* at 289, 590 *A.*2d 1133 (quoting *State v. Williams,* 92 *N.J.Super.* 560, 563, 224 *A.*2d 331 (App.Div. 1966)).]

A prisoner in this situation " 'owe[s] a debt to two different sovereigns. Under our law these debts must be paid, and it is not up to the accused to determine in what order they should be

paid.'" *Ibid.* (quoting *Guerrieri v. Maxwell,* 174 *Ohio St.* 40, 46, 186 *N.E.*2d 614, 618 (1962)).

To aid in our decision, we refer to a few other general principles concerning the impact on a prisoner's original sentence of the prisoner's subsequent escape and service of a sentence for a crime committed in another jurisdiction. "As a matter of common law, constitutional law, and common sense, a prisoner is not entitled to credit on his sentence for those periods when he willfully and voluntarily absents himself from prison without authorization." *Woods v. Steiner,* 207 *F.Supp.* 945, 953 (D.Md.1962). Justice Butler explained long ago that "[e]scape from prison interrupts service, and the time elapsing between escape and retaking will not be taken into account or allowed as a part of the term." *Anderson v. Corall,* 263 *U.S.* 193, 196, 44 *S.Ct.* 43, 44, 68 *L.Ed.* 247, 254 (1923). The Supreme Court of Louisiana, in deciding whether a state prisoner is entitled to credit for time served in a psychiatric hospital after his escape, the commission of other offenses, and capture in another jurisdiction, stated that "[g]enerally, credit for time spent while serving a sentence under a conviction in one jurisdiction will not be allowed against a sentence upon another conviction in a second jurisdiction." *Jennings v. Hunt,* 272 *So.*2d 333, 334 (La.1973) (citing Helen D. Brooks, Annotation, *Right of State or Federal Prisoner to Credit for Time Served in Another Jurisdiction Before Delivery to State or Federal Authorities,* 18 *A.L.R.*2d 511 (1951)). "The basic reasoning behind this rule is that each jurisdiction's punishment must be separately satisfied by custodial confinement of the violator." *Ibid.; see also Sampley v. Morris,* 632 *P.*2d 837, 839 (Utah 1981) (finding "no basis in law, logic or justice * * * [to give] credit on * * * Utah sentences for time served in foreign penal institutions [on separate sentences committed] while * * * on escape from Utah"). Federal courts have been particularly sensitive to encroachment in this area, insisting that a federal prisoner is not entitled to credit on his federal sentence for time spent in state prison following escape and state conviction even

though the sentence by the state court was made to run concurrently with the federal sentence the prisoner was then serving. *Lionel v. Day*, 430 *F.Supp.* 384, 386 (W.D.Okla.1976). "Obviously no comment or order by a state judge can control the service of a federal sentence." *Ibid.* As between states, the United States Constitution Article IV, Section 1, does not require that one state give "full faith and credit" to the sentencing disposition of a sister state. *See Nelson, supra,* 399 *U.S.* at 229, 90 *S.Ct.* at 1966, 26 *L.Ed.*2d at 582.

### III

In *Robbins, supra,* the defendant insisted that New Jersey was obliged to carry out its full punishment of life imprisonment before he could be returned to California to face the imposition of a death sentence. In this case defendant seeks to force New Jersey to carry out the intentions of a California judge with respect to the order of punishment, unilaterally to impose on New Jersey the determination of how the debt owed to the two sovereigns should be paid.

■ Defendant argues first that the Department's action violates a sentencing provision of the Code of Criminal Justice (the Code), *N.J.S.A.* 2C:44–5.d., which states: "Except as otherwise provided in this section, multiple terms of imprisonment shall run concurrently or consecutively as the court determines when the second or subsequent sentence is imposed." He contends that the California court imposed the pertinent "subsequent sentence." Defendant claims that the California court that imposed the three-year sentence for the California armed-robbery conviction was the appropriate entity to determine whether that sentence should be concurrent or consecutive to the previously-imposed New Jersey sentence and that the New Jersey DOC has "over-stepped its authority by overriding the decision of the California court."

We disagree entirely. Rather, we agree with the reasoning of *State v. Hugley*, 198 *N.J.Super.* 152, 156–58, 486 *A.*2d 900

(App.Div.1985), that the consecutive-feature provisions of the Code did not contemplate the imposition of sentences in foreign jurisdictions. *Hugley* considered whether the so-called "gaptime" provisions of *N.J.S.A.* 2C:44–5.b(2) applied to a New Jersey prisoner who had escaped to Florida, where he was convicted of and served a sentence for a crime committed there, and who was subsequently sentenced to another term in New Jersey for an offense committed prior to the Florida sentence. That court explained that the problem the gap-time provision was intended to correct was a situation in which the prosecutor was "dragging his heels" in pursuing an indictment, knowing that an inmate is available for final disposition of an offense. *Id.* at 158, 486 *A.*2d 900. We note, as did the *Hugley* court, that the Legislature did address in the Code, when relevant, the relationship of out-of-state convictions to in-state convictions, and "when it intended to cover out-of-state convictions, it specifically did so." *Id.* at 157, 486 *A.*2d 900.

This "credit" issue has arisen elsewhere in connection with the California sentencing provisions. In *Braun v. Rhay*, 416 *F.*2d 1055, 1057 (9th Cir.1969), Braun had escaped from Washington's custody and was later tried and convicted on a different offense and sentenced to serve six months to fourteen years in California concurrently with any unexpired terms. California offered to surrender him to Washington so that he might serve the two states' sentences concurrently. Washington refused, but requested that Braun be returned to Washington after the expiration of the California sentence. The *Braun* court held:

> [T]here is no due process requirement that a state accept the tendered surrender of a prisoner of another state or otherwise lose the right to reassert jurisdiction over him when he has completed his sentence in the other state. Nor is there any due process requirement that one state credit to the remaining time of a sentence, the time served by an escapee while incarcerated in another state for a crime committed during the escape period. [*Ibid.*]

■ On the other hand, we do agree that interstate sentencing does present the issues of equity and comity as between the states. The Interstate Agreement on Detainers, *N.J.S.A.*

2A:159A–1 to –15, addresses those issues. For example, under *N.J.S.A.* 2A:159A–5 a prisoner who is surrendered to another state for prosecution receives credit on the sending state's sentence for the time served in temporary custody in the other state. We note the excellent discussion of the issues in the similar case of *Chalifoux v. Commissioner of Corrections*, 375 *Mass.* 424, 377 *N.E.*2d 923 (1978). In that case, Chalifoux, a Massachusetts prisoner, had escaped to California, where he was arrested and charged with a California kidnapping offense. The California court ordered that the one-to-twenty-five-year sentence be served concurrently with the previously-imposed Massachusetts sentence. *Id.* 377 *N.E.*2d at 924. Like Breeden, Chalifoux wrote to the Massachusetts Department of Corrections and requested release to the Massachusetts correctional authorities. Massachusetts, like New Jersey, declined. (Massachusetts declined to prosecute the escape charge. The complaint against Chalifoux was dismissed for lack of a speedy trial. The detainer on the original Massachusetts sentence remained in effect. *Id.* 377 *N.E.*2d at 925.) There, as here, the court noted that "[n]either party points to any statute which bears significantly on the issues in this case," and that "no constitutional * * * right [exists] to credit for any time served in California." *Ibid.* The court concluded "that fairness is the appropriate measure in determining whether and to what extent [the Massachusetts prisoner] must be given credit for the time he served in California," and ruled that Massachusetts "was not obliged to credit time spent by [the prisoner] serving his California sentence against his Massachusetts sentence. The California court did not purport to direct that result, and, even if it had, Massachusetts would have had no obligation to give full faith and credit to that judgment." *Id.* at 926 (citing *Nelson, supra*, 399 *U.S.* at 229, 90 *S.Ct.* at 1966, 26 *L.Ed.*2d at 582).

The reason that the *Chalifoux* court chose to credit the prisoner with the time is that the Massachusetts Corrections Department "never advised [him] of its decision not to credit

him with time served in California." *Ibid.* The court concluded that "it is unfair for Massachusetts to refuse to receive a prisoner on transfer and then to decline to credit him with time served elsewhere * * * without advising him promptly of that determination. Chalifoux was effectively and unfairly denied any reasonable opportunity to seek relief from his California sentence." *Ibid.*

That element of unfairness is not present in this case. Defendant knew the position taken by New Jersey authorities and sought release from confinement in California. As noted, California has a sovereign policy to release its prisoners to the custody of another jurisdiction if the California court imposes a sentence that is intended to be concurrent with an unexpired sentence in the other jurisdiction. *In re Stoliker, supra,* 49 *Cal.*2d 75, 315 *P.*2d 12. When the other jurisdiction declines to receive the prisoner for concurrent service, one could conclude, at first glance, that the prisoner is being held for the foreign state's interest, because California's penal purposes would have been fully achieved by transfer to the other jurisdiction. However, California does not release the prisoner in that circumstance. Hence, when California continues to hold the prisoner, it must be doing so at least partially in its own interest, else it would release the prisoner outright to the other jurisdiction. *See State v. Willis,* 376 *N.W.*2d 427, 428 (Minn.1985) (finding that prisoner "was held both" on Illinois charges and Minnesota hold, for charges pending against him there, during period of incarceration in Illinois). Obviously, if New Jersey were declining jurisdiction solely because of space limitations, it would in essence be "warehousing" its prisoners in California, and the lodging of a detainer there would mean effectively that the prisoner is being held in New Jersey's interest.

However, if the New Jersey DOC is declining jurisdiction to effectuate a sentencing policy, it is exercising a judicial function, not a corrections function. *See State v. Warren,* 115 *N.J.* 433, 558 *A.*2d 1312 (1989) (holding that "negotiated" sentence impinges on judicial sentencing function). For example, if in

this case the circumstances had been slightly altered and defendant had escaped after the assault conviction in New Jersey but before sentencing, and had been returned to New Jersey by California for sentencing, a New Jersey judge's decision to impose a sentence concurrent with the unexpired California term would be the controlling determination.

The difference here is that we have not an original sentence that considered the consecutive feature, but an interrupted sentence. What we lack is a sentencing determination about whether the resumed sentence is to be consecutive or concurrent to the California sentence. The DOC stated: "It is the policy of this department that Subject cannot continue service of the unserved portion of his New Jersey sentence until such time as he has completed service of any duly imposed sentence."

## IV

Hence, we agree with the Appellate Division's view that the matter is ultimately to be decided on principles of equity and comity. Furthermore, we also believe that the sovereign decision with respect to the order of punishments should not be exercised by the DOC. The Commissioner fulfills the executive function of administering a system of imprisonment. In some systems of criminal jurisprudence, the judicial function is limited to an adjudication of guilt or innocence, and the matter of sentencing is primarily reposed in correctional officials. However, both this State and the federal government have departed from this system. In New Jersey, the judge primarily determines the length of a sentence. No statute confers on the Commissioner the authority to determine whether sentences shall be consecutive or concurrent. Sentencing is a uniquely judicial function. *Warren, supra,* 115 *N.J.* at 447–49, 558 *A.*2d 1312. If the sentencing authority of the State is to yield to that of another state, then it must be with the concurrence of the sentencing authority of New Jersey.

█ The most sensible solution is to allow the prisoner to move for a change in sentence. Although neither the Code nor the *Rules Governing Criminal Practice* specifically contemplate an authority to resentence in such circumstances, we have heretofore, in the absence of specific statutory direction, interpreted the Code to further its general purposes. *See State v. Roth,* 95 *N.J.* 334, 369, 471 *A.*2d 370 (1984) (referring to provisions of *N.J.S.A.* 2C:44–1 to –8, which cover authority of court in sentencing). The general sentencing purposes of the Code will best be accommodated if a prisoner claiming credit under principles of comity for time served elsewhere applies to the sentencing court pursuant to the procedures set forth in *Rule* 3:21–10 (governing reduction of, or change in, sentence). We do not anticipate many such applications because we doubt that many states have a policy such as California's.

█ In exercising that authority under *Rule* 3:21–10, the court shall consider, in addition to the interests of comity, whether the penal purposes of its original sentence will have been fulfilled by allowing a defendant credit for time served in the other jurisdiction under that jurisdiction's intent that the punishment for both offenses be concurrent. Although "[f]rom the inside all jails look alike," *State ex rel. Argersinger v. Hamlin,* 236 *So.*2d 442, 445 (Fla.1970) (Boyd, J., concurring in part, dissenting in part), *rev'd,* 407 *U.S.* 25, 92 *S.Ct.* 2006, 32 *L.Ed.*2d 530 (1972), the reasons for a prisoner's confinement outside of New Jersey may be quite different and sentencing policies in the foreign state may differ from ours. The defendant who violates the law of two states owes a debt to two different states. The sentencing court shall determine if the debt due to New Jersey is satisfied. Had the New Jersey DOC accepted custody, as California had offered, the penal purposes of both sentences would have been fulfilled. The New Jersey sentencing court should consider whether, because California retained custody over defendant, the penal purposes of both sentences were fulfilled.

The court may conclude that despite the concern for comity, consecutive sentencing is required to vindicate the sentencing purposes of the Code. *See State v. Russo,* 243 *N.J.Super.* 383, 412–14, 579 *A.*2d 834 (App.Div.1990), *certif. denied,* 126 *N.J.* 322, 598 *A.*2d 882 (1991); *State v. Day,* 216 *N.J.Super.* 33, 37–38, 522 *A.*2d 1019 (App.Div.), *certif. denied,* 107 *N.J.* 640, 527 *A.*2d 462 (1987). Alternatively, the court may conclude, just as it could have decided to make the sentences concurrent had it originally imposed the sentence while the defendant was subject to an unexpired sentence elsewhere, that although separated in time and place, the offenses suggest a single period of aberrant behavior not warranting consecutive punishment.

The judgment of the Appellate Division is reversed. Defendant may apply for resentencing under *Rule* 3:21–10.

*For Reversal*—Chief Justice WILENTZ and Justices CLIFFORD, HANDLER, POLLOCK, GARIBALDI and STEIN—7.