796 A.2d 847

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT,
v. DONNA L. CARREKER, A/K/A LISA GOOD,
DEFENDANT–APPELLANT.

Argued January 14, 2002—Decided May 14, 2002.

*J. Michael Blake*, Assistant Deputy Public Defender, argued the cause for appellant (*Peter A. Garcia*, Acting Public Defender, attorney).

*Robert E. Bonpietro*, Deputy Attorney General, argued the cause for respondent (*John J. Farmer, Jr.*, Attorney General of New Jersey, attorney).

The opinion of the Court was delivered by

VERNIERO, J.

This appeal involves the "gap-time credit" provision found at *N.J.S.A.* 2C:44–5b(2). Generally, that provision becomes relevant when a defendant, who has been sentenced previously to a term of imprisonment, is sentenced again for a different offense committed prior to the imposition of the earlier sentence. In that circumstance, "the defendant shall be 'credited' at the time of the second sentence for so much of the term of imprisonment as has been served on the prior sentence." *Richardson v. Nickolopoulos*, 110 *N.J.* 241, 242, 540 *A.*2d 1246 (1988). The narrow question before us is whether the statute entitles defendant to gap-time credit for time served on her out-of-state sentence. The Appellate Division concluded that the answer to that question is no. We agree and affirm.

I.

On April 6, 1998, defendant sold what appeared to be cocaine to an undercover police officer in Somerville (actually, the substance was flour). The record does not reveal defendant's whereabouts in the immediate aftermath of that transaction. Defendant's presentence report, however, lists "Fugitive" as one of the offenses committed by her, suggesting that defendant fled the jurisdiction following the Somerville encounter.

On June 25, 1998, New York authorities sentenced defendant to an indeterminate term of imprisonment of one-to-three years for third-degree possession of a controlled dangerous substance stemming from a December 1997 arrest in that state. While defendant was incarcerated at New York's Albion Correctional Facility (Albion), officials in New Jersey lodged a detainer against her on or about October 23, 1998, pursuant to an arrest warrant arising out of the Somerville incident. (The record does not indicate how or when New Jersey authorities learned of defendant's whereabouts.) On December 8, 1998, defendant filed a request under the Interstate Agreement on Detainers, *N.J.S.A.* 2A:159A–1 to –15 (IAD), to resolve the New Jersey charges.

In January 1999, defendant was indicted in Somerset County for third-degree distribution of an imitation controlled dangerous substance, in violation of *N.J.S.A.* 2C:35–11a. On March 9, 1999, she was extradited from Albion to the Somerset County jail. Defendant and the State ultimately reached a plea agreement under which defendant would serve a four-year term to run concurrent with her New York sentence. The trial court sentenced her accordingly on June 11, 1999.

Defendant requested gap-time credit for the time served on her New York sentence. Specifically, she requested a 351–day credit calculated from the date (June 25, 1998) on which she began serving the New York sentence to the date (June 11, 1999) on which she was sentenced in New Jersey. The trial court denied that request. In an unpublished decision, the Appellate Division affirmed. This Court granted defendant's petition for certification. 168 *N.J.* 290, 773 *A.*2d 1153 (2001).

II.

A.

The gap-time statute is codified at *N.J.S.A.* 2C:44–5b(2) and provides, in relevant part:

When a defendant who has previously been sentenced to imprisonment is subsequently sentenced to another term for an offense committed prior to the former sentence, other than an offense committed while in custody:

. . . .

(2) Whether the court determines that the terms shall run concurrently or consecutively, the defendant shall be credited with time served in imprisonment on the prior sentence in determining the permissible aggregate length of the term or terms remaining to be served[.]

■ Generally, the statute applies when: (1) a defendant has been sentenced previously to a term of imprisonment, (2) he or she is sentenced subsequently to another term, and (3) both offenses occurred prior to the imposition of the first sentence. *State v. French,* 313 *N.J.Super.* 457, 461, 712 *A.*2d 1281 (Law Div.1997). If those elements are established, then the defendant must be awarded credit for the time served on the prior sentence when "the permissible aggregate length of the term or terms" is determined. *N.J.S.A.* 2C:44–5b(2).

■ New Jersey courts have surmised that the statute's purpose "is to avoid the manipulation of trial dates to the disadvantage of defendants and to put defendants in the same position that they would have been 'had the two offenses been tried at the same time.'" *Booker v. New Jersey State Parole Bd.,* 136 *N.J.* 257, 260, 642 *A.*2d 984 (1994) (quoting Model Penal Code (MPC), § 7.06 commentary at 278 (1962)). Stated differently, the statute was intended to "counteract any dilatory tactics of the prosecutor" in pursuing a conviction for another offense after a defendant has been sentenced on the previous offense. *State v. Hall,* 206 *N.J.Super.* 547, 550, 503 *A.*2d 344 (App.Div.1985); Cannel, *New Jersey Criminal Code Annotated,* comment 4 on *N.J.S.A.* 2C:44–5 (1999).

New Jersey's statute is derived largely from section 7.06(2)(b) of the MPC. The MPC's earlier 1954 draft of that section had limited its scope to sentences imposed solely within an individual sentencing state. See MPC § 7.06(1) (Tentative Draft No. 2 (1954)). The MPC's drafters ultimately deleted that "in-state" limitation in their final 1961 proposal. See MPC § 7.06 (Proposed Final Draft

No. 1 (1961)).  Consequently, the MPC's final version, as modified and enacted in New Jersey in 1978, neither expressly requires nor expressly precludes awarding gap-time credit for time served on an out-of-state sentence.  *L.* 1978, *c.* 95, § 2C:44-5.

### B.

Against that backdrop, there is a conflict of authority within the Appellate Division on whether the statute requires gap-time credit for time served on an out-of-state sentence.  In *State v. Hugley,* the defendant was indicted for robbery in New Jersey in 1979, and he then escaped to Florida and committed another crime there. 198 *N.J.Super.* 152, 155, 486 *A.*2d 900 (App.Div.1985).  After the defendant was convicted and sentenced in Florida in September 1979, New Jersey officials lodged a detainer against him to try him for the robbery offense.  *Ibid.* The defendant received a three-to five-year New Jersey sentence in January 1981.  *Ibid.*

The court held that the defendant was not entitled to gap-time credit for the year and four months that he had served on his Florida sentence.  *Id.* at 161, 486 *A.*2d 900.  The court noted that the statutory provisions immediately adjacent to the gap-time provision, namely, *N.J.S.A.* 2C:44-5a and 2C:44-5c, expressly apply to in-state sentences.  *Id.* at 157, 486 *A.*2d 900.  *N.J.S.A.* 2C:44-5a provides, in relevant part, that "[t]he aggregate of consecutive terms to a county institution shall not exceed 18 months[.]"  *N.J.S.A.* 2C:44-5c requires that, in certain circumstances, sentences must run consecutively "[w]hen a defendant is sentenced to imprisonment for an offense committed while on parole in this State[.]" The court concluded that "[h]ad the Legislature intended that [the gap-time provision], positioned between these two provisions, have broader coverage and include convictions in other jurisdictions, it most probably would have indicated such intention." *Hugley, supra,* 198 *N.J.Super.* at 157, 486 *A.*2d 900.

The *Hugley* court also presumed that the purpose of the statute is "to deter a prosecutor from 'dragging his heels' in pursuing an

indictment when he knows that an inmate is available for a final disposition of an offense." *Id.* at 158, 486 *A.*2d 900. Because the defendant escaped from New Jersey to Florida, the prosecutor was unable to proceed on the indictment, eliminating the possibility of unjust delay on the prosecutor's part. *Ibid.* As a matter of policy, the court reasoned that a defendant should not be allowed to escape from New Jersey, elude detection, and then obtain credit for the time served in the other jurisdiction. *Id.* at 159, 486 *A.*2d 900. The court also observed that absent the gap-time statute, out-of-state prisoners are protected against undue prosecutorial delay by virtue of the IAD. *Id.* at 158, 486 *A.*2d 900. The court cited the IAD's provision that permits out-of-state defendants to notify New Jersey authorities of their whereabouts and to move to have their untried indictments either resolved within 180 days or dismissed. *Id.* at 158–59, 486 *A.*2d 900; *see N.J.S.A.* 2A:159A–3.

Finally, the court rejected the defendant's request not only for credit for the time served in Florida, but also for the time spent in New Jersey awaiting sentencing for the New Jersey offense. *Hugley, supra,* 198 *N.J.Super.* at 161, 486 *A.*2d 900. In that regard, the court considered the time spent in New Jersey to be a "continuation" of the defendant's Florida sentence under the IAD. *Ibid.; see N.J.S.A.* 2A:159A–5(f) (providing that "[d]uring the continuance of temporary custody [in the receiving state] or while the prisoner is otherwise being made available for trial as required by this agreement, time being served on the [sending state's] sentence shall continue to run").

A subsequent panel of the Appellate Division applied a different analysis. In *State v. Dela Rosa,* the court concluded that the defendant was entitled to gap-time credit for that portion of his out-of-state sentence that he served in the Bergen County jail as he awaited sentencing on a New Jersey offense. 327 *N.J.Super.* 295, 301, 743 *A.*2d 336 (App.Div.), *certif. denied,* 164 *N.J.* 191, 752 *A.*2d 1293 (2000). The defendant was indicted in Bergen County for offenses committed in 1991, but failed to appear for trial. *Id.* at 297, 743 *A.*2d 336. In October 1996, while still a fugitive, the

defendant was sentenced to two and one-half to five years imprisonment in New York for a drug offense committed in that state. *Ibid.*

New Jersey officials filed a detainer against the defendant while he was serving his New York sentence. In April 1998, the defendant was transferred to New Jersey. *Ibid.* The defendant pled guilty and requested gap-time credit only for the three months spent in the Bergen County jail awaiting sentencing for his New Jersey offense. *Id.* at 297–98, 743 *A.*2d 336. The *Dela Rosa* court ruled in favor of that request, explicitly rejecting the rationale advanced in *Hugley.* *Id.* at 300–01, 743 *A.*2d 336.

The *Dela Rosa* court reasoned that our Legislature had intended both in-state and out-of-state sentences to be eligible for gap-time credit under the statute. *Ibid.* The court noted that the Legislature had not included the "in-state" language contained in the earlier 1954 version of the MPC. *Id.* at 301, 743 *A.*2d 336. Like *Hugley,* the *Dela Rosa* court also noted that the statute refers expressly to in-state sentences in the two subsections immediately adjacent to the gap-time provision, *N.J.S.A.* 2C:44–5a and –5c. *Dela Rosa, supra,* 327 *N.J.Super.* at 300–01, 743 *A.*2d 336. In expressing its disagreement with *Hugley,* the *Dela Rosa* court invoked a familiar canon of construction that when "the Legislature has carefully employed a term in one place and yet excluded it in another, it should not be implied where excluded." *Id.* at 301, 743 *A.*2d 336 (citations omitted).

Additionally, the court found no sound policy reason to distinguish between a New Jersey inmate and one who, although serving an out-of-state sentence, is physically incarcerated in New Jersey awaiting disposition of a New Jersey charge. *Ibid.* The court also sought to distinguish *dicta* contained in this Court's opinion in *Breeden v. New Jersey Department of Corrections,* 132 *N.J.* 457, 465–66, 625 *A.*2d 1125 (1993). *Dela Rosa, supra,* 327 *N.J.Super.* at 301–03, 743 *A.*2d 336.

The defendant in *Breeden* escaped from prison in New Jersey and received an intervening concurrent sentence in California.

*Breeden, supra,* 132 *N.J.* at 459–60, 625 *A.*2d 1125. In his subsequent request for credit for the time spent in California, the defendant cited *N.J.S.A.* 2C:44–5d, which states that "multiple terms of imprisonment shall run concurrently or consecutively as the court determines when the second or subsequent sentence is imposed." The defendant argued that the California court imposed the "subsequent sentence" and was the "appropriate entity to determine whether that sentence should be concurrent or consecutive to the previously-imposed New Jersey sentence[.]" *Id.* at 465, 625 *A.*2d 1125. We rejected that contention, stating:

> We disagree entirely. Rather, we agree with the reasoning of *State v. Hugley,* 198 *N.J.Super.* 152, 156–58, 486 *A.*2d 900 (App.Div.1985), that the consecutive-feature provisions of the Code [of Criminal Justice] did not contemplate the imposition of sentences in foreign jurisdictions. *Hugley* considered whether the so-called "gap-time" provisions of *N.J.S.A.* 2C:44–5.b(2) applied to a New Jersey prisoner who had escaped to Florida, where he was convicted of and served a sentence for a crime committed there, and who was subsequently sentenced to another term in New Jersey for an offense committed prior to the Florida sentence. That court explained that the problem the gap-time provision was intended to correct was a situation in which the prosecutor was "dragging his heels" in pursuing an indictment, knowing that an inmate is available for final disposition of an offense. *Id.* at 158, 486 *A.*2d 900. We note, as did the *Hugley* court, that the Legislature did address in the Code, when relevant, the relationship of out-of-state convictions to in-state convictions, and "when it intended to cover out-of-state convictions, it specifically did so." *Id.* at 157, 486 *A.*2d 900.
>
> [*Breeden, supra,* 132 *N.J.* at 465–66, 625 *A.*2d 1125.]

The *Dela Rosa* court sought to distinguish *Breeden* by determining that *Breeden* applies only in the context of a consecutive-concurrent sentence determination. *Dela Rosa, supra,* 327 *N.J.Super.* at 302–03, 743 *A.*2d 336. Also, *Dela Rosa* did not reach the question concerning how to treat that portion of an out-of-state sentence served in the foreign jurisdiction. *Id.* at 300, 743 *A.*2d 336. Fairly read, however, *Dela Rosa's* rationale would seem to support application of the gap-time provision in that broader context.

In this case, the court below rejected *Dela Rosa's* reading of *Breeden,* recognizing that this Court in *Breeden*

> expressly discussed gap-time credits. Whether, therefore, what the Court said as to gap-time credit "technically was 'obiter' or not, [lower] courts should abide by

110

it." *State v. Rush,* 46 *N.J.* 399, 416, 217 *A.*2d 441 (1966). *And see State v. Wein,* 162 *N.J.Super.* 159, 163, 392 *A.*2d 607 (App.Div.1978) ("[a] considered determination by our Supreme Court, even though dictum, commands respect by this intermediate appellate court"), *rev'd on other grounds,* 80 *N.J.* 491, 404 *A.*2d 302 (1979).

[(Alterations in the original).]

The court below also agreed with the rationale stated in *Hugley*. In so doing, the court emphasized that the present case did not involve prosecutorial "foot dragging" because defendant had fled New Jersey following the Somerville incident. The court concluded that, under those circumstances, "[t]he reason for gap-time credit [ ] does not exist here."

A recent Appellate Division panel has charted a somewhat different course. In *State v. McIntosh,* the defendant sought gap-time credit for time served on a Pennsylvania sentence. 346 *N.J.Super.* 1, 3, 786 *A.*2d 151 (App.Div.2001). The court held that such credit does not apply to a defendant's time served in an out-of-state jail, but that the credit does apply to that portion of the out-of-state sentence that is served in a New Jersey facility. *Id.* at 4–5, 786 *A.*2d 151. In so holding, the court in essence agreed with portions of both *Dela Rosa* and *Hugley*.

In respect of the portion of the defendant's sentence served in New Jersey the court echoed *Dela Rosa's* holding, explaining that "[o]nce defendant arrived in New Jersey, he assumed the same status as any defendant awaiting disposition of the charge and, therefore, was entitled to the same benefits and protections." *Ibid.* Yet, in respect of the portion of the sentence served in a foreign facility, the *McIntosh* court mirrored *Hugley's* reasoning, noting that the safeguards provided under the IAD adequately protect defendants against dilatory tactics by the prosecution. *Id.* at 5–6, 786 *A.*2d 151.

In sum, two decisions of the Appellate Division, *Hugley* and the decision below, have held that gap-time credit is not available for any aspect of an out-of-state sentence; one decision, *Dela Rosa,* has held that gap-time credit is available for that portion of the out-of-state sentence being served while a defendant is in New

Jersey; and one decision, *McIntosh*, has held that gap-time credit is not available for that portion of an out-of-state sentence served in the foreign facility, but is available for that portion of the sentence that is served in New Jersey.

### III.

■ We hold that the gap-time provision applies to no portion of the time served by defendant on her New York sentence. Both the language of the gap-time provision and the purpose underlying the provision compel our disposition.

### A.

■ The language of the gap-time statute is directed at New Jersey sentencing authorities, instructing them to award a defendant credit for the "time served in imprisonment on the prior sentence in determining the permissible aggregate length of the term or terms remaining to be served[.]" *N.J.S.A.* 2C:44–5b(2). In that regard, the court below reasoned that the term "aggregate," within the framework of the statute, "cannot encompass an out-of-state term as New Jersey prison authorities have no jurisdiction to 'aggregate' out-of-state sentences." (Citing *Booker, supra,* 136 *N.J.* at 264–68, 642 *A.2d* 984; *Richardson, supra,* 110 *N.J.* at 246, 540 *A.2d* 1246; *State v. Richardson,* 208 *N.J.Super.* 399, 409–13, 506 *A.2d* 43 (App.Div.), *certif. denied,* 105 *N.J.* 552, 523 *A.2d* 188 (1986)). We reason similarly. We are satisfied that by including the term "aggregate" in the gap-time provision, the Legislature intended that provision to relate solely to in-state sentences.

In advocating for a contrary result, defendant asks that we adopt *Dela Rosa's* interpretation of the statute by focusing on the language of the two subsections, *N.J.S.A.* 2C:44–5a and –5c, that are immediately adjacent to the gap-time provision. Defendant argues that by including the term "in this State" in subsection 5c and omitting it from subsection 5b (the gap-time provision), the

Legislature intended to include her New York sentence as part of the gap-time calculation.

We disagree. When viewed in context, the phrase "in this State" is necessary in subsection 5c because of the subject matter addressed in that provision. Subsection 5c provides, in relevant part, that "[w]hen a defendant is sentenced to imprisonment for an offense committed while on parole *in this State,*" such a term of imprisonment must run consecutively unless otherwise ordered by the court. *N.J.S.A.* 2C:44–5c (emphasis added). Because New Jersey has a greater interest in punishing individuals who commit additional crimes while on New Jersey parole, rather than those who violate the parole laws of another state, the phrase "in this State" is necessary to emphasize that special interest.

Similarly, the in-state reference in subsection 5a is not dispositive. That subsection provides that "[t]he aggregate of consecutive terms to *a county institution* shall not exceed 18 months[.]" *N.J.S.A.* 2C:44–5a (emphasis added). By that language, the Legislature expressed a particular interest in capping the length of sentences to be served in a county, as opposed to State, facility. In contrast, the interest sought to be addressed in subsection 5b, namely, the aggregation of sentences by New Jersey authorities, did not require inclusion of the "in this State" language. That language simply is unnecessary given that the focus on "aggregate" sentencing extends only to New Jersey sentences.

█ In the same vein, we reiterate our statement in *Breeden* that "the Legislature did address in the Code, when relevant, the relationship of out-of-state convictions to in-state convictions, and 'when it intended to cover out-of-state convictions, it specifically did so.'" *Breeden, supra,* 132 *N.J.* at 466, 625 *A.*2d 1125 (quoting *Hugley, supra,* 198 *N.J.Super.* at 157, 486 *A.*2d 900); see *N.J.S.A.* 2C:44–4c (expressly defining "conviction in another jurisdiction" for use in determining applicability of extended terms of incarceration); *N.J.S.A.* 2C:43–7.1a (expressly including certain federal and out-of-state convictions when applying "Three Strikes" law). Here, the Legislature did not express a specific intention to

include out-of-state sentences in the gap-time calculation. We cannot, therefore, supplement the statute by giving it more breadth than that intended by its drafters. 3 Norman J. Singer, *Sutherland Statutory Construction* § 59:8 at 174 (6th ed.2001).

Nonetheless, defendant argues that the legislative history of the MPC, whose drafters contemplated an in-state limitation for gap time, compels an award of gap-time credits in these circumstances. This Court previously has discussed the history of the MPC as well as the Legislature's enactment of some, but not all, of the MPC's provisions. See *Richardson, supra,* 110 *N.J.* at 243–44, 540 *A.*2d 1246. In our view, the history of the MPC's section 7.06, including the MPC's unapproved version seeking to limit its scope to in-state sentences, does not demonstrate that the Legislature intended the statute to apply to defendant's out-of-state sentence.

The MPC's earlier "in-state" language was proposed and ultimately rejected, not by members of the New Jersey Legislature, but by the drafters of the MPC. As noted, that unapproved language first appeared in 1954, and then the MPC's drafters deleted it in 1961, well before New Jersey enacted the statute in 1978. We acknowledge that the MPC may be relevant when analyzing the history of our criminal code. *State v. Sewell,* 127 *N.J.* 133, 143, 603 *A.*2d 21 (1992). We are unwilling, however, to surmise that the Legislature in 1978 contemplated an in-state limitation on gap-time and then rejected it, merely because the MPC's drafters considered that limitation among themselves some twenty years earlier. See *Kosak v. United States,* 465 *U.S.* 848, 867 n. 5, 104 *S.Ct.* 1519, 1530 n. 5, 79 *L.Ed.*2d 860, 875 n. 5 (1984) (Stevens, J., dissenting) (observing that "the intentions of the proponents of previous legislation which was never enacted are at most a secondary aid to construing the intent of those that enacted a descendent of it").

B.

Our disposition is consistent with the purpose of the gap-time provision. As indicated, that purpose is to mitigate the possible

manipulation of sentences by prosecutors who might delay a criminal indictment even when an inmate is available for disposition on a New Jersey offense. In the case of a defendant (like defendant here) who has fled the jurisdiction and is serving time in a foreign facility, the risk of manipulation is greatly reduced, if not vitiated, by that defendant's absence. *Hugley, supra,* 198 *N.J.Super.* at 158, 486 *A.*2d 900.

Most importantly, defendants who are serving out-of-state sentences are given adequate protections against prosecutorial delay under the relevant provisions of the IAD. As stated above, once a detainer is filed, the IAD provides that out-of-state defendants can notify New Jersey authorities of their whereabouts and request to have their untried indictments resolved within 180 days of that request. *N.J.S.A.* 2A:159A–3. In the absence of good cause for delay, if the prosecutor does not resolve the untried indictment within 180 days, it must be dismissed. *N.J.S.A.* 2A:159A–3(a), (d).

Indeed, the explicit purpose of the IAD is "to encourage the expeditious and orderly disposition of [outstanding] charges" and to determine the status of all detainers based on "untried indictments, informations or complaints." *N.J.S.A.* 2A:159A–1. We thus agree with the *Hugley* court's observation that the protections afforded under the IAD differentiate an out-of-state prisoner "from the in-state prisoner who, if not for the provisions of [gap time] might 'languish' in jail and lose his [or her] opportunity for a concurrent sentence because a prosecutor failed to move." *Hugley, supra,* 198 *N.J.Super.* at 158, 486 *A.*2d 900.

Defendant argues that some New Jersey prosecutors may wait until the last day within the 180–day window before acting on a pending indictment. That risk of delay, contends defendant, requires inclusion of an out-of-state sentence in the gap-time calculation. We are not persuaded by that hypothetical. Defendant offers no concrete support to indicate that the 180–day window is presumptively unreasonable, or that prosecutors purposely will delay filing a detainer or taking other action once a suspect's whereabouts become known.

■ Even if we were to speculate that an unethical prosecutor might thwart the letter or spirit of the IAD, we would not fashion a rule of law on the basis of such speculation. The heightened responsibilities of prosecutors include faithful adherence to all statutory protections accorded defendants, including those found in the IAD. "Because of the overwhelming power vested in his office, [a prosecutor's] obligation to play fair is every bit as compelling as his responsibility to protect the public." *State v. Torres,* 328 *N.J.Super.* 77, 94, 744 *A.*2d 699 (App.Div.2000); *see also RPC* 3.8 (outlining special responsibilities of prosecutors).

Significantly, the present record belies defendant's theoretical concerns. In this case, New Jersey authorities lodged a detainer against defendant and then, within a reasonable time, sought final disposition of the New Jersey charges consistent with the IAD. No delay is apparent in the record and, therefore, as observed by the court below, "[t]he reason for gap-time credit [ ] does not exist here."

■ For completeness, we note that defendant has not requested "jail credit" under *Rule* 3:21-8 for the time spent in Somerset County awaiting disposition of the New Jersey offense; nor would she be entitled to such credit on the record presented. Generally, that form of credit applies to confinement attributable to the offense that gave rise to the sentence. *State v. Black,* 153 *N.J.* 438, 456, 710 *A.*2d 428 (1998). In this case, defendant's presentence confinement in Somerset County was attributable not to a New Jersey offense, but to the fact that, under *N.J.S.A.* 2A:159A-5(f) of the IAD, she was required to continue her term of incarceration under her New York sentence. Under that circumstance, New Jersey jail credit does not apply.

C.

■ We also agree with *Hugley's* observation that "[c]riminal statutes, generally speaking, are to be strictly construed, but the rule of strict construction does not mean that the 'manifestations of the Legislature's intention should be disregarded.'" *Hugley,*

*supra*, 198 *N.J.Super.* at 156, 486 *A.*2d 900 (quoting *State v. Edwards*, 28 *N.J.* 292, 298, 146 *A.*2d 209 (1958)). The language and purpose of the gap-time statute provide enough indication of the Legislature's intent for the Court to hold confidently that gap time does not apply to out-of-state sentences. We reached a similar conclusion in *Breeden*, finding that *N.J.S.A.* 2C:44–5d, which did not contain an "in this State" limitation, did not apply to out-of-state sentences. *Breeden*, *supra*, 132 *N.J.* at 465–66, 625 *A.*2d 1125.

Lastly, by placing all aspects of an out-of-state sentence on the same footing, our holding will add uniformity to the administration of the criminal justice system. See *State v. Styker*, 262 *N.J.Super.* 7, 14, 619 *A.*2d 1016 (App.Div.) (observing "that uniformity of sentences ... was one of the primary objectives sought to be accomplished by the Code's revision of our criminal law"), *aff'd*, 134 *N.J.* 254, 633 *A.*2d 521 (1993). We acknowledge, of course, that we could achieve the same uniformity by including all portions of an out-of-state sentence in the gap-time calculation. Such a rule, however, is not appropriate because it would run counter to the statute's language and underlying policy rationale for the reasons already expressed.

### D.

In sum, our holding is reflective of a sensible reading of the statute and congruent with other aspects of Title 2C, is consistent with the purpose of the gap-time provision, and is consonant with the strong public policy favoring uniformity in the administration of our criminal justice rules. Above all, we have endeavored to interpret the statute consistent with the Legislature's intent in enacting it.

### IV.

The judgment of the Appellate Division is affirmed. To the extent that *Dela Rosa* and *McIntosh* are inconsistent with our holding, they are overruled.

*For affirmance*—Chief Justice PORITZ, and Justices STEIN, COLEMAN, LONG, VERNIERO, LaVECCHIA and ZAZZALI—7.

*Opposed*—None.