SYLLABUS

(This syllabus is not part of the opinion of the Court. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Supreme Court. Please note that, in the interest of brevity, portions of any opinion may not have been summarized).

**State v. William R. Joe** (A-62-15) (077034)
[NOTE: This is a companion case to State v. C.H. (A-56-15) (076535), also filed today.]

**Argued November 29, 2016 -- Decided March 7, 2017**

**FERNANDEZ-VINA, J., writing for a unanimous Court.**

In this appeal, the Court considers whether incarceration outside of New Jersey on out-of-state charges entitles a defendant to jail credit pursuant to Rule 3:21-8.

In 2010, defendant William R. Joe was arrested in New Jersey and charged with certain narcotics offenses. Before trial, he fled the state and a bench warrant was issued for his arrest. Defendant was subsequently arrested and charged with other crimes in the State of New York. Defendant remained in custody on the New York charges from the date of his arrest through sentencing on or about February 13, 2012.

Although New Jersey prosecutors lodged an interstate detainer with New York officials on August 12, 2011, defendant was not transferred to New Jersey custody until after he was sentenced for the New York charges. Defendant pleaded guilty to the narcotics charges in New Jersey and sought jail credits for the time he spent in pre-sentence custody in New York. The trial court denied the credits sought, and sentenced defendant to two five-year prison terms subject to a twenty-one-month period of parole ineligibility. The sentences were to be served concurrently to each other and to any sentence defendant was serving outside of New Jersey.

Defendant appealed his sentence, seeking 236 days of jail credit for the time he spent in pre-sentence custody in New York between his arrest and sentence on the New York charges. The Appellate Division held that defendant was entitled to jail credit pursuant to State v. Hernandez, 208 N.J. 24 (2011), and Rule 3:21-8 from the time the interstate detainer was lodged. The panel remanded the case "for an award of additional jail credits for the time between the lodging of the detainer for the charges at issue here in New York and the date on which defendant was sentenced in New York."

The State filed a petition for certification on the issue of out-of-state jail credits. The Court granted the petition and remanded the case to the Appellate Division to reconsider on the plenary calendar. 220 N.J. 267 (2015).

Following the submission of written briefs, the Appellate Division reaffirmed its decision to award defendant jail credits for the period between the filing of the New Jersey detainer and the New York sentencing. The panel concluded that the State "failed to present a principled reason for reaching a different conclusion."

The Court granted the State's petition for certification to address the jail credit issue. 224 N.J. 526 (2016).

**HELD**: Consistent with the policy purposes of Rule 3:21-8, as explained in State v. Hernandez, 208 N.J. 24 (2011), defendants who are confined out of state on non-New Jersey charges are not entitled to jail credit for time spent in pre-sentence custody.

1. Rule 3:21-8 states that "[t]he defendant shall receive credit on the term of a custodial sentence for any time served in custody in jail or in a state hospital between arrest and the imposition of sentence." Courts refer to this credit as "jail credits." The award of jail credits is undergirded by important policy considerations. Jail credits promote equal protection and fundamental fairness by preventing the "double punishment" of indigent defendants who cannot afford bail. Without jail credits, defendants who could not make bail would effectively serve more time in custody than those with the financial means to afford bail. Two additional policy considerations guide the Court's jail credit jurisprudence: First, the Court seeks to apply jail credit in a manner that prevents the real time served

from turning on "happenstance," such as whether the same charges are included in one indictment or spread over multiple indictments. Second, the Court has emphasized the need "to promote uniformity in sentencing." (pp. 7-8)

2. Although not directly at issue in this case, rules concerning gap time credit—a related category of sentencing credit that reflects many of the same policy considerations as jail credit—are also instructive. Gap-time credit applies when a defendant, who has been sentenced previously to a term of imprisonment, is sentenced again for a different offense committed prior to the imposition of the earlier sentence. In such instances, the defendant shall be "credited" at the time of the second sentence for so much of the term of imprisonment as has been served on the prior sentence. (pp. 8-9)

3. Criminal defendants who are held out of state fall within the purview of the Interstate Agreement on Detainers, N.J.S.A. 2A:159A-1 to -15 (IAD). The IAD is an agreement among contracting states which sets out circumstances under which a party state may obtain temporary custody of a prisoner incarcerated in another jurisdiction. The purpose of the IAD is "to encourage the expeditious and orderly disposition of [outstanding] charges and determination of the proper status of any and all detainers based on untried indictments, informations or complaints." N.J.S.A. 2A:159A-1. (pp. 9-10)

4. Prior to Hernandez, New Jersey courts addressed several cases in which defendants sought credit for time spent in custody outside of New Jersey state prisons. The courts granted defendants jail credit for time spent incarcerated outside of New Jersey when the sole reasons for their confinements were detainers filed by New Jersey prior to their transfer. See State v. Hemphill, 391 N.J. Super. 67 (App. Div.), certif. denied, 192 N.J. 68 (2007); State v. Beatty, 128 N.J. Super. 488 (App. Div. 1974). In contrast, the Appellate Division denied a defendant jail credit where a New Jersey detainer was lodged while the defendant was already incarcerated in a federal prison in Indiana. State v. Council, 137 N.J. Super. 306 (App. Div. 1975). In a related pre-Hernandez case, the Court declined to award gap-time credit to a defendant who was incarcerated in New York before she could serve her previously imposed New Jersey sentence. State v. Carreker, 172 N.J. 100 (2002). (pp. 10-11)

5. Before Hernandez, courts awarded jail credits under Rule 3:21-8 "only for 'such confinement as is attributable to the arrest or other detention resulting from the particular offense.'" 208 N.J. at 36 (quoting State v. Black, 153 N.J. 438, 456 (1998)). In Hernandez, this Court departed from the traditional attribution analysis for determining the correct application of jail credit. The Court applied credits to the Hernandez defendants in a manner that maximized the effect of the credits on their aggregate imprisonment terms and parole ineligibility periods. The Court reasoned that such an application of jail credit best comports with the policy goals of facilitating fundamental fairness, discouraging gamesmanship by prosecutors and defendants, and promoting uniformity in sentencing. (pp. 11-14)

6. The Court disagrees with defendant's argument that Rule 3:21-8 and Hernandez require jail credit where a defendant is held in out-of-state custody, even if that custody arises from out-of-state charges. The Court holds that if a defendant is incarcerated out of state and the confinement is not due solely to New Jersey charges, jail credit does not apply. That holding is consistent with jail and gap-time credit case law as well as the policy goals enunciated in Hernandez. Moreover, defendants who are in out of state pre-sentence custody on non-New Jersey charges do receive certain statutory protections against undue delays under the IAD. Those IAD provisions already protect defendants against any undue delays and potential prosecutorial manipulation. (pp. 14-18)

The judgment of the Appellate Division is **REVERSED**, and the sentence imposed by Superior Court, Law Division is **REINSTATED**.

**CHIEF JUSTICE RABNER and JUSTICES LaVECCHIA, ALBIN, PATTERSON, SOLOMON, and TIMPONE join in JUSTICE FERNANDEZ-VINA's opinion.**

STATE OF NEW JERSEY,

    Plaintiff-Appellant,

       v.

WILLIAM R. JOE,

    Defendant-Respondent.

Argued November 29, 2016 – Decided March 7, 2017

On certification to the Superior Court,
Appellate Division.

Carol M. Henderson, Assistant Attorney
General, argued the cause for appellant
(Christopher S. Porrino, Attorney General of
New Jersey, attorney).

Tamar Y. Lerer, Assistant Deputy Public
Defender, argued the cause for respondent
(Joseph E. Krakora, Public Defender,
attorney).

JUSTICE FERNANDEZ-VINA delivered the opinion of the Court.

This appeal concerns whether incarceration outside of New Jersey on out-of-state charges entitles a defendant to jail credit pursuant to Rule 3:21-8. We hold that it does not.

In 2010, defendant William R. Joe was arrested in New Jersey and charged with certain narcotics offenses. Before trial, he fled the state and a bench warrant was issued for his arrest. Defendant was subsequently arrested and charged with

1

other crimes in New York State.  He did not make bail in New York.

Although New Jersey prosecutors lodged an interstate detainer with New York officials, defendant was not transferred to New Jersey custody until after he was sentenced for the New York charges.  Defendant pleaded guilty to the narcotics charges in New Jersey and sought jail credits for the time he spent in pre-sentence custody in New York.  The trial court denied the credits sought.

The Appellate Division reversed and held that defendant was entitled to jail credit pursuant to State v. Hernandez, 208 N.J. 24 (2011), and Rule 3:21-8 from the time the interstate detainer was lodged.  We granted certification to address the jail credit issue.  We reverse the judgment of the Appellate Division and reinstate the sentence imposed by the trial court.

I.

On March 19, 2010, defendant was arrested in New Jersey on various charges related to the sale and possession of a controlled dangerous substance (CDS), crack cocaine.  He was released following his arrest.  In August 2010, a Warren County grand jury charged defendant with five counts related to his drug activity:  third-degree distribution of CDS, N.J.S.A. 2C:35-5(a) and (b)(3); two counts of third-degree possession of CDS with intent to distribute, N.J.S.A. 2C:35-5(a)(1) and

2

(b)(3); and two counts of third-degree possession of CDS, N.J.S.A. 2C:35-10(a)(1).

Defendant failed to appear for arraignment on those charges and, on September 24, 2010, a bench warrant was issued for his arrest. On or about June 21, 2011, defendant was arrested in New York on weapons charges.[1] Defendant remained in custody on the New York charges from the date of his arrest through sentencing on or about February 13, 2012. Defendant was sentenced to three years' imprisonment for the New York weapons charges.

The Warren County Prosecutor's Office lodged a detainer with New York authorities on August 12, 2011, seeking defendant's transfer to New Jersey to prosecute the 2010 CDS indictment. New Jersey authorities did not obtain custody of defendant until some point in 2013, pursuant to the Interstate Agreement on Detainers, N.J.S.A. 2A:159A-1 to -15 (IAD).

In July 2013, defendant filed a motion in the Superior Court to obtain jail credits pursuant to Rule 3:21-8 for the time he spent in New York custody prior to being sentenced on the weapons charges. Defense counsel averred that defendant was

---

[1] The parties dispute the precise dates of the New York arrest and sentencing. Because we hold that defendant is not entitled to jail credits, those dates are not significant for our analysis.

entitled to credit for time spent in pre-sentence custody in New York pursuant to this Court's decision in Hernandez.

On August 13, 2013, defendant pleaded guilty to one count of third-degree possession of CDS with intent to distribute and one count of third-degree distribution of CDS pursuant to a plea agreement. The trial judge decided defendant's motion for jail credits the same day. Observing that New Jersey did not have control over the time defendant spent in New York custody, the trial judge found Hernandez inapplicable and denied defendant's motion.

The State filed a motion for an extended term under N.J.S.A. 2C:43-6(f) and -7 on the basis that defendant was a repeat drug offender. On September 4, 2013, the trial court granted the motion and sentenced defendant to two five-year prison terms subject to a twenty-one-month period of parole ineligibility. The sentences were to be served concurrently to each other and to any sentence defendant was serving outside of New Jersey.

Defendant appealed his sentence before the Appellate Division's Excessive Sentence Oral Argument panel. Defendant sought 236 days of jail credit for the time he spent in pre-sentence custody in New York between June 21, 2011, and February 13, 2012. On July 1, 2014, the panel remanded the case "for an award of additional jail credits for the time between

4

the lodging of the detainer for the charges at issue here in New York and the date on which defendant was sentenced in New York."

Thereafter, the State filed a petition with this Court for certification on the issue of out-of-state jail credits. We granted the petition and remanded to the Appellate Division to reconsider the case on the plenary calendar. 220 N.J. 267 (2015).

Following the submission of written briefs, the Appellate Division reaffirmed its decision to award defendant jail credits for the period between the filing of the New Jersey detainer and the New York sentencing. The panel concluded that the State "failed to present a principled reason for reaching a different conclusion."

We granted the State's petition for certification to address the jail credit issue. 224 N.J. 526 (2016).

## II.

The State contends that Hernandez is inapplicable where a defendant serves time in pre-sentence custody in another state "unless that confinement is due solely to the New Jersey charges." The State asserts that this Court did not intend for Hernandez to apply Rule 3:21-8 so broadly. According to the State, New Jersey case law supports the denial of credit for out-of-state pre-trial detention unless a defendant is held solely on New Jersey charges.

5

In addition, the State argues that the policy purposes behind Hernandez are not implicated in this matter because the Warren County Prosecutor had no control over defendant's confinement in New York. The State maintains that even though a notice of detainer was filed, transfer was not possible until the New York charges were resolved. As a result, the State asserts, there was no potential for manipulation by New Jersey prosecutors and no impetus for awarding jail credits.

Defendant avers that Hernandez and Rule 3:21-8 entitle him to jail credit for the time he spent in pre-sentence custody in New York. He argues that "[t]ime in jail awaiting trial is time that must be credited to a defendant's sentence, regardless of whether, how, or where it was served." He maintains that Hernandez merely abolished the requirement that jail credits apply only to sentences that give rise to confinement.

Defendant also disputes the assertion that New Jersey case law supports the denial of out-of-state credits. In defendant's view, pre-Hernandez case law turned on whether time spent in pre-sentence custody was directly attributable to the particular offense for which credit was sought, and Hernandez nullified this analysis. He characterizes New Jersey's ability to prosecute him as irrelevant to the award of jail credits in this State post-Hernandez.

6

Lastly, defendant contends that the purpose of jail credit -- to prevent unequal sentencing for rich and poor defendants -- can be furthered only by extending credit to out-of-state custody.  He claims that to rule otherwise would allow the actual duration of incarceration to turn on "happenstance."

III.

A.

Rule 3:21-8 states that "[t]he defendant shall receive credit on the term of a custodial sentence for any time served in custody in jail or in a state hospital between arrest and the imposition of sentence."  Courts refer to this credit as "jail credits."  State v. Rawls, 219 N.J. 185, 192 (2014).  Jail credits are "mandatory, not discretionary," when Rule 3:21-8 applies.  Hernandez, supra, 208 N.J. at 37.

"Jail credits are 'day-for-day credits.'"  Rawls, supra, 219 N.J. at 193 (quoting Hernandez, supra, 208 N.J. at 37).  When credit applies, it is credited to "the 'front end' of a defendant's sentence, meaning that [defendant] is entitled to credit against the sentence for every day defendant was held in custody for that offense prior to sentencing."  Hernandez, supra, 208 N.J. at 37.

The award of jail credits is undergirded by important policy considerations.  Rawls, supra, 219 N.J. at 193.  Jail credits promote equal protection and fundamental fairness by

7

preventing the "double punishment" of indigent defendants who cannot afford bail. Ibid. Without jail credits, defendants who could not make bail would effectively serve more time in custody than those with the financial means to afford bail. Ibid.

Two additional policy considerations guide our jail credit jurisprudence. First, this Court seeks to apply jail credit in a manner that prevents the real time served from turning on "happenstance," such as whether the same charges are included in one indictment or spread over multiple indictments. Hernandez, supra, 208 N.J. at 46-48. We have eschewed such applications of jail credit because they are ripe for manipulation by prosecutors and defendants. Ibid. Second, we have emphasized the need "to promote uniformity in sentencing." Id. at 48-49.

Although not directly at issue in this case, rules concerning gap-time credit -- a related category of sentencing credit that reflects many of the same policy considerations as jail credit -- are also instructive. Unlike jail credit, gap-time credit is mandated by statute, N.J.S.A. 2C:44-5(b)(2). Gap-time credit applies "when a defendant, who has been sentenced previously to a term of imprisonment, is sentenced again for a different offense committed prior to the imposition of the earlier sentence." State v. Carreker, 172 N.J. 100, 103 (2002). In such instances, "the defendant shall be 'credited' at the time of the second sentence for so much of the term of

imprisonment as has been served on the prior sentence." Ibid. (quoting Richardson v. Nickolopoulos, 110 N.J. 241, 242, (1988)).

Criminal defendants who are held out of state fall within the purview of the IAD. "The IAD is an agreement among contracting states which sets out circumstances under which a party state may obtain temporary custody of a prisoner incarcerated in another jurisdiction." State v. Cook, 330 N.J. Super. 395, 412 (App. Div.), certif. denied, 165 N.J. 486 (2000). The purpose of the IAD is "to encourage the expeditious and orderly disposition of [outstanding] charges and determination of the proper status of any and all detainers based on untried indictments, informations or complaints." N.J.S.A. 2A:159A-1.

To facilitate the IAD's purpose, certain time limitations are set forth. After a detainer is filed, a defendant serving an out-of-state prison term may request that New Jersey authorities resolve their untried indictments within 180 days of the request. N.J.S.A. 2A:159A-3(a). If a receiving state requests temporary custody to resolve untried charges, the sending state has thirty days from the time of that request to honor it. N.J.S.A. 2A:159A-4(a). Trial must then be commenced within 120 days of the prisoner's arrival. N.J.S.A. 2A:159A-4(c).

Significantly, untried New Jersey indictments will not be dismissed when a sending state denies IAD transfer requests due to unresolved charges in that state. See Cook, supra, 330 N.J. Super. at 413-14 (holding that New Jersey prosecutors were powerless to speed up transfer of prisoner until Pennsylvania charges were resolved); see also N.J.S.A. 2A:159A-3(a) (applying IAD timeframes to "a person [who] has entered upon a term of imprisonment").

B.

Prior to Hernandez, our courts addressed several cases in which defendants sought credit for time spent in custody outside of New Jersey state prisons. For instance, the Appellate Division granted defendants jail credit for time spent incarcerated in Scotland and New York when the sole reasons for their confinements were detainers filed by New Jersey prior to their transfer. State v. Hemphill, 391 N.J. Super. 67, 70-71 (App. Div.), certif. denied, 192 N.J. 68 (2007) (Scotland); State v. Beatty, 128 N.J. Super. 488, 490 (App. Div. 1974) (New York).

In Hemphill, supra, the defendant was credited after being apprehended in Scotland and held there exclusively on a New Jersey warrant while awaiting extradition. 391 N.J. Super. at 69-71. Similarly, in Beatty, supra, the defendant was credited for time spent in New York custody solely on a New Jersey

10

detainer following the expiration of an unrelated New York sentence. 128 N.J. Super. at 490-91.

In contrast, the Appellate Division denied a defendant jail credit where a New Jersey detainer was lodged while the defendant was already incarcerated in a federal prison in Indiana. State v. Council, 137 N.J. Super. 306, 307-09 (App. Div. 1975). The court distinguished that case from Beatty, observing that the defendant's confinement in federal prison was not extended in any respect because of the New Jersey detainer. Ibid.

In a related pre-Hernandez case, this Court declined to award gap-time credit to a defendant who was incarcerated in New York before she could serve her previously imposed New Jersey sentence. Carreker, supra, 172 N.J. at 111-16. In denying gap-time credit, we recognized that awarding out-of-state credits would not serve the underlying purposes of gap-time credit -- discouraging manipulation of sentences by prosecutors and promoting uniformity in sentencing. Id. at 113-16. In addition, we noted that interstate detainer provisions protect defendants against undue delays. Id. at 114.

C.

Before Hernandez, supra, courts awarded jail credits under Rule 3:21-8 "only for 'such confinement as is attributable to the arrest or other detention resulting from the particular

11

offense.'" 208 N.J. at 36 (quoting State v. Black, 153 N.J. 438, 456 (1998)). In Black, supra, we acknowledged that New Jersey courts had taken a negative view of "giving an inmate jail credit against more than one sentence." 153 N.J. at 456-57. Accordingly, we held that a defendant could be awarded jail credit for time spent in pre-sentence custody only when the incarceration was attributable to that specific charge. Id. at 455-62.

This line of reasoning also guided the allocation of credits to the defendants in Beatty and Hemphill. In Beatty, supra, the Appellate Division cited the defendant's out-of-state detention "because of action taken by New Jersey" as justification for the provision of jail credit. 128 N.J. Super. at 491. Similarly, in Hemphill, supra, the Appellate Division observed that credit was "only permissible for a period of incarceration attributable to the crime for which the sentence is imposed." 391 N.J. Super. at 70. The court held that the defendant was entitled to credit for time spent incarcerated out of state on a New Jersey detainer "as long as defendant is not being held on other charges," suggesting that credit would not be awarded if the defendant was also held on out-of-state charges. Id. at 71.

Attribution reasoning also supported the holdings of Carreker and Council, which denied defendants credits. In

12

Carreker, supra, we postulated that if the defendant had requested jail credit instead of gap-time credit, it would not be awarded because jail credit "applies [only] to confinement attributable to the offense that gave rise to the sentence." 172 N.J. at 115. In Council, supra, the Appellate Division denied jail credit in part because the time the defendant spent incarcerated in federal prison "was obviously for an unrelated offense" and did not stem from the New Jersey detainer. 137 N.J. Super. at 309.

In Hernandez, this Court departed from the traditional attribution analysis for determining the correct application of jail credit. We clarified that "defendants are entitled to precisely what the Rule provides: credits against all sentences 'for any time served in custody in jail or in a state hospital between arrest and the imposition of sentence' on each case." Hernandez, supra, 208 N.J. at 28 (quoting R. 3:21-8).

We applied credits to the Hernandez defendants in a manner that maximized the effect of the credits on their aggregate imprisonment terms and parole ineligibility periods. Id. at 46-49.[2] "[A]s interpreted by Hernandez, Rule 3:21-8 requires that a defendant receive jail credit even though the charges are not

---

[2] The specific factual scenarios presented in Hernandez, are set forth in our companion case, State v. C.H., ___ N.J. ___, ___ (2017) (slip op. at 9-12).

13

directly responsible for his or her incarceration." Rawls, supra, 219 N.J. at 194. We reasoned that such an application of jail credit best comports with the policy goals of facilitating fundamental fairness, discouraging gamesmanship by prosecutors and defendants, and promoting uniformity in sentencing. Hernandez, supra, 208 N.J. at 46-49.

In Hernandez, we also discussed our previous holdings in Black and Carreker. Id. at 42-45. We held that the facts of those cases were distinguishable because they concerned matters in which the defendants were seeking jail credit while already serving custodial sentences. Id. at 45. We reiterated our adherence to the holding of Carreker, finding that it was not relevant for the Hernandez defendants. Id. at 44 n.16.

## IV.

Defendant argues that Rule 3:21-8 and Hernandez require jail credit where a defendant is held in out-of-state custody, even if that custody arises from out-of-state charges. We disagree. We hold that if a defendant is incarcerated out of state and the confinement is not due solely to New Jersey charges, jail credit does not apply. This holding is consistent with jail and gap-time credit case law as well as the policy goals enunciated in Hernandez.

Our holding today is in accord with prior New Jersey jail credit law. In the analogous case of Council, supra, the

14

Appellate Division declined to extend jail credit to a defendant who was serving time in federal prison for an unrelated offense, recognizing that New Jersey's detainer did not "in any way lengthen[] his stay in [federal prison]."  137 N.J. Super. at 309.  Here, defendant was confined because of New York charges completely unrelated to the untried New Jersey charges.  Additionally, defendant was unable to show that his New York confinement was prolonged in any manner by New Jersey's detainer.

Moreover, our holding does not run counter to Beatty or Hemphill.  In both of those cases, the Appellate Division applied jail credit because the defendants were held out of state exclusively on New Jersey charges.  Beatty, supra, 128 N.J Super. at 491; Hemphill, supra, 391 N.J. Super. at 71.  Here, in contrast, defendant was already incarcerated in New York because of New York charges and would have been held regardless of whether New Jersey charges were pursued or a detainer was filed.

Defendant observes that the holdings of Council, Beatty, and Hemphill were based, in part, on the attribution requirement that this Court cast aside in Hernandez.  Although it is true that those opinions discussed attribution, the crux of their analyses is that confinement must result from New Jersey charges and detainers alone to justify jail credit.  Council, supra, 137 N.J. Super. at 308-09; Beatty, supra, 128 N.J Super. at 491;

15

Hemphill, supra, 391 N.J. Super. at 71.  Thus, the holdings of those cases remain instructive and were not abrogated by Hernandez.

Most importantly, our holding today is consistent with the policy aims expounded upon in Hernandez.  If we were to award defendants jail credit for time spent in out-of-state prisons on unrelated charges, it would not further equal protection concerns, discourage gamesmanship by New Jersey prosecutors, or promote uniformity in sentencing.  See Hernandez, supra, 208 N.J. at 36, 46-49.

Here, for example, provision of jail credit for defendant's out-of-state custody on unrelated charges would not further equal protection by preventing double punishment of indigent defendants, nor would it discourage manipulation by prosecutors because New Jersey had no control over defendant's confinement in New York.  See ibid.  Defendant is not being deprived of equal protection or fundamental fairness because New Jersey is not responsible for his pre-sentence custody in New York.  Even if the detainer had been filed immediately, New Jersey could not command a transfer of defendant until the New York charges were resolved.  See Cook, supra, 330 N.J. Super. at 413-14; N.J.S.A. 2A:159A-3(a).

Furthermore, New Jersey has no influence over the setting of a defendant's out-of-state bail, or even over whether bail

16

will be an option.  Therefore, it cannot be said that New Jersey was capable of punishing defendant doubly because the New Jersey charges had no bearing on the time defendant spent incarcerated in New York.

We also observe that defendants who are in out-of-state pre-sentence custody on non-New Jersey charges do receive certain statutory protections against undue delays under the IAD.  As this Court reasoned in Carreker, supra, "defendants who are serving out-of-state sentences are given adequate protections against prosecutorial delay under the relevant provisions of the IAD," which set forth explicit timeframes in which untried indictments must be resolved.  172 N.J. at 114.[3] Those IAD provisions already protect defendants against any undue delays and potential prosecutorial manipulation.

Finally, by denying jail credit to defendants who spend time in out-of-state pre-sentence custody, we enhance the uniformity of our sentencing process.  See Hernandez, supra, 208 N.J. at 48 ("The Rule must be consistently applied to promote uniformity in sentencing . . . .").  By limiting jail credit to defendants who are either detained out of state exclusively on New Jersey charges or who are confined in New Jersey, our

---

[3] Although the gap time policy purposes of discouraging prosecutorial gamesmanship and promoting uniformity find their basis in statute, we have identified the same policy goals for jail credit.  See Hernandez, supra, 208 N.J. at 46-49.

17

holding "add[s] uniformity to the administration of the criminal justice system." Carreker, supra, 172 N.J. at 116.

In conclusion, consistent with the policy purposes of Rule 3:21-8, as explained in Hernandez, we hold that defendants who are confined out of state on non-New Jersey charges are not entitled to jail credit for time spent in pre-sentence custody.

V.

The judgment of the Appellate Division is reversed, and the sentence imposed by the Law Division is reinstated.


CHIEF JUSTICE RABNER and JUSTICES LaVECCHIA, ALBIN, PATTERSON, SOLOMON, and TIMPONE join in JUSTICE FERNANDEZ-VINA's opinion.

18