**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4491-16T1

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

DEMETRIUS C. COPE, a/k/a
RAASHID HABSHIN, RASHEED
COPE, DEMETRIUS M. COPE,
RASHID BUATUADOWA,
and RAASHID ADOWA,

     Defendant-Appellant.

_____

        Argued November 27, 2018 – Decided April 11, 2019

        Before Judges Rothstadt and Gilson.

        On appeal from Superior Court of New Jersey, Law Division, Burlington County, Indictment No. 06-10-1455.

        John Vincent Saykanic, Designated Counsel, argued the cause for appellant (Joseph E. Krakora, Public Defender, attorney; John Vincent Saykanic, on the briefs).

Lila B. Leonard, Deputy Attorney General, argued the cause for respondent (Gurbir S. Grewal, Attorney General, attorney; Lila B. Leonard, of counsel and on the brief).

PER CURIAM

Defendant Demetrius Cope, also known as Raashid Adowa, appeals from his conviction and sentence that were imposed after a jury found him guilty of second-degree Certain Persons Not to Have Weapons, N.J.S.A. 2C:39-7(b) (certain persons offense). The charge arose from the seizure of a rifle and ammunition found in his apartment in July 2006. On appeal, defendant contends the trial court (1) improperly reinstated his conviction after the prosecutor agreed to dismiss it one week earlier, (2) erred by failing to grant his motion for an acquittal, and (3) incorrectly excluded any gap-time credits in determining his sentence. We find no merit to defendant's contentions. Accordingly, we affirm.

A brief recitation of the procedural history in this case is necessary to give context to our determination of defendant's appeal. The trial that led to the entry of the judgment of conviction under appeal was the result of defendant's second trial for the same offense. In October 2006, defendant was charged in a four-count indictment with various weapons charges. Prior to his first trial in 2011,

three of the counts were dismissed and he proceeded to trial on the one certain persons offense. State v. Cope, 224 N.J. 530, 536-37 n.1 (2016).

After his first conviction on that charge, defendant appealed and we reversed based upon the trial court's denial of his motion to suppress and its interference with his ability to pursue a defense of third party guilt. See State v. Cope, No. A-2165-11 (App. Div. Mar. 21, 2014). The Supreme Court granted the State's petition for certification. State v. Cope, 220 N.J. 40 (2014). In a later opinion, the Court disagreed with our determination as to the denial of suppression, but concurred with our assessment of the third party guilt issue and ordered a new trial. See Cope, 224 N.J. at 536.

After we remanded the matter for a new trial and before the State filed its petition for certification, the trial court released defendant. On April 4, 2014, the prosecutor moved to dismiss the indictment, which the trial court granted. At the time, however, due to a miscommunication, the prosecutor was unaware that the Office of the State Attorney General made a determination to pursue a petition for certification, even though its intention had been expressed to the prosecutor's office and defense counsel on March 28, 2014. For that reason, on April 9, 2014, the Attorney General filed a Notice of Petition for Certification, and on April 11, 2014, filed a motion to reinstate the indictment. On May 7,

2014, the trial court granted that motion.  The State filed its petition for certification on May 21, 2014.

While the State's petition for certification was pending, defendant filed a motion with us, for leave to appeal from the reinstatement of the indictment. We declined to consider the application because we lacked jurisdiction while the matter was before the Court.  We indicated that if the petition was denied, "defendant may reactivate his motion for leave to appeal . . . ."  Defendant never raised the issue of the indictment's reinstatement before the Court.

Defendant's new trial took place in December 2016.  Essentially, the same facts that led to defendant's arrest and conviction that were developed at defendant's first trial were again adduced at the new trial.  The Court summarized those facts in its earlier opinion.  See Cope, 224 N.J. at 537-38.  We again summarize them here to the extent that they are pertinent to our consideration of the present appeal.

On July 5, 2006, then-Detective David Brintzinghoffer and five other police officers went to defendant's home to execute a warrant for defendant's arrest.  Id. at 537.  At the time the warrant was being executed, some of the officers were familiar with defendant based upon his several prior drug and weapons convictions.  Id. at 537 n.2.

Defendant lived in a second-floor apartment that included a balcony. Id. at 537. In executing the warrant, Lieutenant Richard Sullivan, Sergeant Christopher Ent and another officer positioned themselves behind the building to observe the balcony while Brintzinghoffer and two others knocked on the door. Id. at 537-38. There was a "commotion" and one of the officers in the back notified the others that defendant came out onto the balcony while bending over and then "run[ning] into the apartment from the back porch." Id. at 538. Brintzinghoffer banged on the door and a female voice asked him to hold on; he stated "that he had a warrant for the defendant and that the door would be kicked in unless defendant answered." Ibid.

Defendant's adult daughter, A.G., opened the door, and police found defendant lying on the couch. Ibid. Once defendant was arrested, Brintzinghoffer conducted a protective sweep of the apartment, including the balcony, where he found a camouflage rifle bag containing an assault-type rifle and ammunition. Ibid. The rifle and its accessories were seized as evidence, id. at 538, and defendant was charged in the indictment with various weapons possession offenses, including the subject certain persons offense. Id. at 536-37.

At defendant's second trial, the State called Brintzinghoffer, Sullivan, and one of the other officers present at defendant's house on July 5, 2006. They all testified to the events surrounding defendant's arrest. The State also called Alison Rees and Jodi Marsanopoli of the Bureau of Alcohol, Tobacco, and Firearms who testified that there were no identifiable fingerprints on the rifle and that the rifle was operable.

After the State rested, defendant moved for acquittal under Rule 3:18-1 on the basis that "there [was] no evidence presented that [he] had ever come into contact with this firearm or the firearm case or really knew it was ever there." The trial court denied the motion based on the testimony from the officers that while defendant did not actually possess the rifle bag, he had been seen bending over the place where it was found and as such, a reasonable jury could find, at the very least, that he possessed the bag by virtue of it being in his apartment.

Defendant, who at the time was serving a sentence on federal weapons charges, did not testify, but called his daughter to explain the events surrounding his arrest in July 2006. She also testified that her father had his own construction company and that his employees would come over to the apartment.

Defendant also called William McGovern, a police officer who interviewed D.S., an individual who worked with defendant and was the subject of defendant's

6

third-party defense claim. McGovern testified that D.S. had signed an affidavit in 2011 in which he stated that in 2006 he owned the rifle in question and left it at defendant's apartment, "[w]ithout permission [and he] also decided to stash it on . . . [defendant's] balcony until work was finished because [he] was going to sell it . . . ." The videotape of McGovern's May 3, 2011 interview was played for the jury and it depicted D.S. being placed under oath and stating that he worked for defendant and left his rifle at defendant's house, though he did not know the date he left it there, but that it had to have been before his own May 2006 incarceration. During cross-examination, McGovern testified that his research indicated D.S. was already incarcerated by July 5, 2006, the date the rifle was found by police on defendant's balcony.

In rebuttal, the State called Lanny Frederick, an investigator for the Public Defender's Office. Frederick described being present during a conversation between defense counsel and D.S. on November 9, 2016, concerning D.S. telling the truth if he was called as a witness. According to D.S.'s statements to defense counsel and Frederick, he was coerced into providing the 2011 statement where he claimed ownership of the rifle and he "made it clear [that] he wanted no involvement in this matter."

A-4491-16T1

After considering the evidence, the jury returned a unanimous guilty verdict on the certain persons offense. The trial court then scheduled defendant for sentencing.

At sentencing, defendant argued that he had not committed any offenses since his release in 2014. He requested time served and provided a comprehensive breakdown of his periods of incarceration in order to receive 2,176 days of jail credit with prior service and gap-time. The State rejected defendant's calculation, and argued that he should not be entitled to 492 days "from the time [he] was taken into custody on . . . federal charges until a detainer was issued" out of state court.

The federal charges to which the State referred arose from unrelated charges for which defendant was arrested and indicted in another county in 2007. Defendant remained in custody on those charges until he made bail in November 2007. In July 2008, he was re-arrested by federal authorities because the United States Attorney assumed jurisdiction over those charges. As a result, the county prosecutor dismissed its indictment, which led to defendant's indictment on federal weapons charges to which he pled guilty in December 2009. In May 2010, the United States District Court for the District of New Jersey sentenced

defendant to five years in federal prison. He completed his federal sentence before being sentenced in this matter.

While in federal custody, a detainer was issued on November 30, 2009, to the federal authorities requesting defendant not be released but held for pick up by the county sheriff for prosecution in this action. The federal authorities acknowledged receipt of the detainer and promised to advise of defendant's anticipated release. Thereafter, defendant requested that he be brought before the Law Division to resolve this matter pursuant to the Interstate Agreement on Detainers, N.J.S.A. 2A:159A-4(a).

At sentencing in this action, the trial court denied the State's motion to impose a sentence in the extended term and sentenced defendant on February 23, 2017, to five years in prison with a five-year period of parole ineligibility. On March 2, 2017, in response to defendant's motion, the trial court amended its sentence and awarded defendant 663 days of jail credits for July 18, 2008 through May 11, 2010, the period after his arrest in this case through sentencing in federal court; prior service credits of 957 days (August 13, 2011 to March 26,

A-4491-16T1

2014); and 458 gap-time credits for the period when he began his federal sentence (May 12, 2010 to August 12, 2011).[1]

The State objected to the award of jail credits. It argued that defendant was on bail on state charges when he was in federal custody, which would mean he would be ineligible for gap or jail credits. Defendant argued that the State agreed he was entitled to thirty-nine days of jail credit when "the State asked for a revocation of [his] bail." The trial court concluded that the credits were awarded in accordance with State v. Hernandez, 208 N.J. 24 (2011), which directed it "give people maximum jail credits and that . . . should not be conditioned upon whether a detainer has been lodged . . . ."

On March 9, 2017, the State filed for reconsideration of defendant's sentence, relying on the Court's opinion in State v. Joe, 228 N.J. 125 (2017), which had recently been decided. The State argued that defendant was not entitled to credit for time spent in federal custody. Defendant maintained that his federal charges were not non-New Jersey charges under Joe because they stemmed from a State investigation that was ultimately superseded by the

---

[1]  The State stipulated defendant was entitled to thirty-nine days credit (from September 25, 2007 to November 2, 2007) when "the State asked for a revocation of [defendant]'s bail." This was for a September 25, 2007 conspiracy charge in Burlington County (bail was never revoked, however).

federal government. He distinguished his case from <u>Joe</u> by arguing that he did not flee the jurisdiction and that <u>Joe</u> created a new rule of law that was not applicable to him. Defendant also contended that his sentence should run concurrent to the federal sentence "because at the time he was incarcerated on [the present] charges, . . . the federal . . . sentence was . . . pending."

On May 11, 2017, the trial court granted the State's motion and resentenced defendant to amend the credit calculations by awarding no gap-time credit, fifty-four days of jail credit, and 585 days of prior service credit. The court stated that <u>Joe</u> clarified precedent regarding out-of-state-custody and gap-time credits and added that the ruling "ma[de] it clear that this [c]ourt's construction . . . of <u>Hernandez</u> was in error and this defendant was not entitled to the panoply of jail and gap[-]time credits . . . ." This appeal followed.

On appeal, defendant specifically argues the following:

> POINT I
>
> [THE TRIAL COURT] ABUSED [ITS] DISCRETION IN GRANTING THE STATE'S MOTION TO REINSTATE THE INDICTMENT IN VIOLATION OF DEFENDANT'S DUE PROCESS RIGHT ESPECIALLY SINCE THERE IS NO INDICATION THAT THE STATE'S MOTION WAS TIMELY FILED.

POINT II

[THE TRIAL COURT] ERRED IN GRANTING THE STATE'S MOTION FOR RECONSIDERATION OF SENTENCE BASED ON STATE V. JOE, 228 N.J. 125 (2017).

    A.    DEFENDANT SHOULD RECEIVE GAP-TIME CREDITS.

. . . .

    B.    EVEN IF THIS COURT FINDS THAT JOE APPLIES TO THE FACTS IN COPE THE COURT BELOW MUST STILL BE REVERSED AND DEFENDANT COPE AWARDED 458 DAYS OF GAP-TIME CREDIT SINCE JOE CREATES A NEW RULE OF LAW AND SHOULD NOT BE APPLIED RETROACTIVELY.

    C.    FUNDAMENTAL FAIRNESS REQUIRES THAT DEFENDANT COPE BE AWARDED ALL CREDITS INCLUDING ANY "GAP-TIME" CREDITS FROM NOVEMBER 25, 2009, WHEN [THE TRIAL COURT] IMPROPERLY ISSUED A BENCH WARRANT FOR FAILURE TO APPEAR WHEN DEFENDANT WAS IN FEDERAL CUSTODY AT THE TIME, RESULTING IN DEFENDANT'S CUSTODY STATUS CHANGING TO MAXIMUM.

    D.    EVEN IF THIS COURT DECLINES TO GRANT JAIL CREDITS

12

THE PRESENT SENTENCE SHOULD BE SERVED CONCURRENT WITH THE COMPLETED FEDERAL SENTENCE.

POINT III

THE COURT BELOW ERRED IN DENYING THE MOTION FOR JUDGMENT OF ACQUITTAL AS THE STATE FAILED TO PROVE EACH AND EVERY ELEMENT OF THE OFFENSE BEYOND A REASONABLE DOUBT.

POINT IV

AN INCREASE OF ANY SENTENCE BY WAY OF A RECONSIDERATION OF SENTENCE CONSTITUTES A VIOLATION OF DEFENDANT'S PROHIBITION AGAINST DOUBLE JEOPARDY RIGHTS UNDER THE FEDERAL AND NEW JERSEY STATE CONSTITUTIONS. (NOT RAISED BELOW).

At the outset, we conclude defendant's argument that it was error for the trial court to reinstate the indictment under the circumstances is without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(2). Suffice it to say, the dismissal was due to the prosecutor's mistake that was immediately cured without any prejudice to defendant. Moreover, because defendant never raised the issue of the indictment's dismissal with the Supreme Court after we declined jurisdiction, he waived his contention that the

13                                                          A-4491-16T1

indictment was improperly reinstated. See State v. Dorn, 233 N.J. 81, 92 (2018) ("[i]t is a longstanding principle that litigants may waive objections through inaction.").

We reach a similar conclusion regarding defendant's contention that his motion for acquittal was denied in error. Defendant argues that the evidence presented about D.S. owning the rifle and placing it in defendant's home created the "reasonable doubt required to acquit," which warranted the granting of his motion. We disagree.

Our review of the denial of a Rule 3:18-1 motion of acquittal is de novo. State v. Dekowski, 218 N.J. 596, 608 (2014). We use "the same standard as the trial court in determining whether a judgment of acquittal was warranted." State v. Ellis, 424 N.J. Super. 267, 273 (App. Div. 2012). In our review, we "assess[] whether the State presented sufficient evidence to defeat an acquittal motion." Dekowski, 218 N.J. at 608. "We must determine whether, based on the entirety of the evidence and after giving the State the benefit of all its favorable testimony and all the favorable inferences drawn from that testimony, a reasonable jury could find guilt beyond a reasonable doubt." Ibid. (quoting State v. Williams, 218 N.J. 576, 594 (2014)); see also State v. Reyes, 50 N.J, 454, 458-59 (1967). Like the trial court, we "must consider only the existence of

such evidence, not its 'worth, nature, or extent.'" State v. Brooks, 366 N.J. Super. 447, 453 (App. Div. 2004) (quoting State v. Kluber, 130 N.J. Super. 336, 342 (1974)).

In order to determine whether the State produced sufficient evidence, we must consider the elements of the offense. "The elements of the certain persons offense are straightforward: conviction of a predicate offense and possession of a firearm." State v. Bailey, 231 N.J. 474, 488 (2018) (citing N.J.S.A. 2C:39-7(b)(1)). "In a certain persons trial, the State must prove that the defendant was convicted of an enumerated predicate offense and later possessed a firearm. Each element must be proved beyond a reasonable doubt." Ibid.

Applying these guiding principles, we conclude that the trial court correctly denied defendant's motions substantially for the reasons that the court placed on the record. The State clearly presented sufficient evidence that the jury could rely upon to convict defendant as the direct evidence and "the favorable inferences support the conclusion" that defendant, who was indisputably previously convicted of a predicate offense, was in, at least, constructive possession of the rifle. Dekowski, 218 N.J. at 610. The fact that there was other evidence, which if accepted by the jury, could lead to his acquittal does not support a finding that defendant satisfied his burden on the

motion. The standard is whether "'a reasonable jury <u>could</u> find guilt of the charge beyond a reasonable doubt,'" not that the evidence mandated a conviction. <u>State v. Bunch</u>, 180 N.J. 534, 548-49 (2004) (emphasis added) (quoting <u>State v. Josephs</u>, 174 N.J. 44, 80 (2002)). <u>See also</u> <u>State v. Muhammad</u>, 182 N.J. 551, 577 (2005); <u>State v. DiFernando</u>, 345 N.J. Super. 382, 399 (App. Div. 2001).

Finally, we turn to defendant's arguments about the trial court's decision to deny him an award of gap-time credits for the period he spent in federal custody. Defendant contends that the court's decision was fundamentally unfair and that the Court's holding in <u>Joe</u> is inapplicable to his entitlement to credits. According to defendant, (1) he "was never arrested nor charged in any other state when the detainer was lodged," (2) the "federal New Jersey charge was related strictly to the State New Jersey charges," and if it was not, (3) his federal sentence does not qualify as an out-of-state conviction under <u>Joe</u>. He also argues that he never fled the jurisdiction or incurred other charges from other states, despite being confined out-of-state. He accuses the State of "double dipping" and notes that he served each day of his federal sentence and that the detainer raised his custody level to maximum in federal prison. Defendant also maintains that if the Court's holding in <u>Joe</u> applies, it creates a new rule of law not subject

to retroactive application. And, he states that because of the "tortured procedural history" and the procedural delays, he should be credited for all gap-time or jail credits accordingly. Because he is entitled to the credits, defendant argues that we "should use [our] authority" to have the current five-year mandatory sentence run concurrent with his federal sentence.

Defendant also argues that his resentencing without gap-time credits violated his constitutional protections against double jeopardy. Relying upon our opinion in State v. Hyland, 452 N.J. Super 372, 381 (App. Div. 2017) (observing that "an illegal sentence [is] one that 'exceeds the maximum penalty provided in the Code for a particular offense' or a sentence 'not imposed in accordance with the law'" (quoting State v. Acevedo, 205 N.J. 40, 45 (2011))), defendant contends that sentencing appeals by the State implicate double jeopardy protections against multiple punishments and that the withdrawal of his gap-time credits increased his sentence and violated the prohibition against double jeopardy. We disagree.

An appeal from an award of jail credits presents an issue of law. "A challenge to an award or denial of jail credits, as inconsistent with Rule 3:21-8, constitutes an appeal of a sentence 'not imposed in accordance with law.'" State v. DiAngelo, 434 N.J. Super. 443, 451 (App. Div. 2014) (quoting State v. Rippy, 431 N.J. Super. 338,

347 (App. Div. 2013)). For that reason, our review is de novo. Hernandez, 208 N.J. at 48-49. In our review, we accord "no special deference to a trial judge's 'interpretation of the law and legal consequences that flow from established facts[.]'" DiAngelo, 434 N.J. Super. at 451 (alteration in original) (quoting State v. McKeon, 385 N.J. Super. 559, 567 (App. Div. 2006)). See also State ex rel I.C., 447 N.J. Super. 247, 254 (App. Div. 2016).

Defendants are entitled to receive credits for time served while in custody awaiting trial or serving a sentence on charges unrelated to those for which they are being sentenced. Depending on their custodial status, they are either entitled to jail credits or gap-time credits.

Jail credits are credited toward a defendant's sentence for "time served in custody in jail . . . between arrest and the imposition of a sentence." R. 3:21-8; see also Hernandez, 208 N.J. at 48; Richardson v. Nickolopoulos, 110 N.J. 241, 242 (1988).

> Jail credits promote equal protection and fundamental fairness by preventing the "double punishment" of indigent defendants who cannot afford bail. . . . [and they] must be applied "in a manner that prevents the real time served from turning on 'happenstance,' such as whether the same charges are included in one indictment or spread over multiple indictments," and "to promote uniformity in sentencing."

[State v. S.A., __ N.J. Super. __, __ (Law Div. 2019)
(slip op. at 3-4) (quoting Joe, 228 N.J. at 130-31)].[2]

Jail credits accrue from the period that a defendant is placed in custody for the offense charged until he is sentenced and they are applied to the minimum mandatory term a defendant must serve before being eligible for parole. See Hernandez, 208 N.J. at 36-37.

If at the time of sentencing a defendant is already serving a term of imprisonment for another unrelated offense, he may be entitled to "gap-time" credits. See N.J.S.A. 2C:44-5(b). Such credits provide "a defendant who is given two separate sentences on two different dates credit toward the second sentence for the time spent in custody since he or she began serving the first sentence." Hernandez, 208 N.J. at 38. However, those credits are applied to the "back end" of the sentence and do not reduce a period of parole ineligibility. Ibid.

In order to grant gap-time credit, rather than jail credit, the following three facts must be found: "(1) the defendant has been sentenced previously to a term of imprisonment[;] (2) the defendant is sentenced subsequently to another term[;] and (3) both offenses occurred prior to the imposition of the first sentence." Id. at 38 (alterations in original) (quoting State v. Franklin, 175 N.J.

---

[2] Approved for publication March 8, 2019.

456, 462 (2003)).  If these three facts are established, "the sentencing court is obligated to award gap-time credits," rather than jail credits.  Ibid.

Here, as discussed earlier, before defendant was sentenced in this matter, he pled guilty to the federal charges and was sentenced in 2010.  Both his federal offense and the present offense occurred before he was sentenced in 2010.  Had defendant been sentenced in state court and held in state custody for the unrelated offense to which he previously pled guilty, he would be, as the trial court originally found, entitled to gap-time credit.

However, as the trial court also determined, in Joe, the Supreme Court clarified its holding in Hernandez and explained clearly "that defendants who are confined out of state on non-New Jersey charges are not entitled to jail credit for time spent in pre-sentence custody."  Joe, 228 N.J. at 138.  The Court expressly "limit[ed] jail credit to defendants who are either detained out of state exclusively on New Jersey charges" or who are confined in the state.  Ibid.  "The Joe Court reasoned that if courts were 'to award defendants jail credit for time spent in out-of-state prisons on unrelated charges, it would not further equal protection concerns, discourage gamesmanship by New Jersey prosecutors, or promote uniformity in sentencing.'"  S.A., __ N.J. Super. __ (slip op at 8-9) (quoting Joe, 228 N.J. at 136-37).

The same reasoning applies here because defendant was not being held in federal custody on exclusively New Jersey charges. Contrary to defendant's contention, the fact that his federal conviction arose from a New Jersey investigation and indictment did not change the fact that the New Jersey indictment was dismissed, a new federal indictment issued, and defendant was sentenced solely on the charge contained in that indictment. Moreover, Joe did not constitute a new rule of law that made its holding inapplicable to defendant. Under these circumstances, defendant was not entitled to any gap-time or jail credits for the time he spent in federal custody before his sentence in this case.

To the extent we have not specifically addressed any of defendant's remaining arguments, we find them to be without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4491-16T1