# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2129-24

A.C., a juvenile,

     Appellant,

v.

JUVENILE JUSTICE
COMMISSION,

     Respondent.

_____

          Submitted September 24, 2025 – Decided November 7, 2025

          Before Judges Currier and Smith.

          On appeal from the Juvenile Justice Commission.

          Jennifer N. Sellitti, Public Defender, attorney for appellant (Rachel E. Leslie, Assistant Deputy Public Defender, of counsel and on the brief).

          Matthew J. Platkin, Attorney General, attorney for respondent (Sookie Bae-Park, Assistant Attorney General, of counsel; Christopher C. Josephson, Deputy Attorney General, on the brief).

PER CURIAM

A.C., a juvenile, appeals the Juvenile Justice Commission's (JJC) final administrative decision to deny him 292 days of jail credit toward his adjusted maximum parole end date. For the reasons which follow, we affirm.

I.

A.

A.C. was committed to a five-year term of incarceration by the JJC after his disposition for conspiracy, aggravated assault, unlawful use of a body vest and criminal attempt – burglary/entering a structure, pursuant to N.J.S.A. 2C:5-2(a)(1), 2C:12-1(b)(1) and 2C:39-13. On January 26, 2023, A.C. was paroled by the JJC. On February 2, 2023, the JJC transferred A.C.'s New Jersey parole to Pennsylvania pursuant to the Interstate Compact for Juveniles. N.J.S.A. 9:23-1 to -18.

While serving his New Jersey parole, Philadelphia police arrested A.C. on March 7, 2024, and charged him with two firearm offenses and evading arrest on foot, pursuant to 18 Pa.C.S.A. § 6106, § 6108 and § 5104.2. He posted bail a week later and was released on March 15, 2024. The JJC issued a parole violation warrant on March 22, 2024, and notified Pennsylvania, seeking to take A.C. into custody. Pennsylvania declined to release A.C. pending resolution of his criminal charges, taking A.C. back into custody and increasing his bail. The

JJC next began extradition proceedings to secure A.C.'s return to face his New Jersey parole violation charges.

While extradition was pending, A.C. pled guilty to the two Pennsylvania firearm charges on August 27, 2024. On November 1, 2024, A.C. was sentenced to a maximum of twenty-three months incarceration in Pennsylvania, with time credit waived, as per his plea agreement. The sentencing order directed that A.C. be immediately paroled, with the Pennsylvania parole being served via house arrest.[1] On January 2, 2025, Pennsylvania vacated the house arrest and modified his sentence to a maximum twenty-three-months' incarceration with no credit for time served and immediate parole. Five days later, the JJC executed its warrant, and A.C. was transported from Pennsylvania to New Jersey.

The record shows A.C. remained in custody in Pennsylvania from March 22, 2024, until he was returned to New Jersey on January 8, 2025—a total of 292 days.

B.

After A.C.'s parole revocation hearing, the JJC adopted the findings of the hearing officer, and issued a final decision. The JJC found, by clear and

---

[1] Because A.C's mother's residence required preparation to facilitate house arrest, A.C. remained in Pennsylvania custody between the November 1, 2024 sentencing and the January 2, 2025 resentencing dates.

A-2129-24

convincing evidence, that A.C. violated his New Jersey parole conditions. The violations included: failure to obey all laws and ordinances; failure to notify his juvenile parole officer of his arrest; and committing weapons crimes in violation of N.J.S.A. 2C:39-1(f) and N.J.S.A. 2C:39-1(r). The JJC revoked A.C.'s parole on January 17, 2025, and set an adjusted maximum parole end date of December 29, 2025.

On January 28, 2025, A.C. moved for reconsideration. A.C. made one claim supporting his argument for credit: that Pennsylvania held him in custody solely due to his New Jersey juvenile warrant. Citing Rule 3:21-8, A.C. contended that he was entitled to credit for time spent in Pennsylvania due to JJC's detainer for the parole violation.

The JJC rejected A.C.'s reconsideration motion, making findings. It stated:

> [A.C.] was sentenced to a 5-year term of incarceration with the [JJC] on April 28, 2021, and was released on parole on February 2, 2023, after serving a portion of that term. [A.C.] was paroled to Pennsylvania for supervision via the Interstate Compact for Juveniles. On March 7, 2024, [A.C.] was arrested by the Philadelphia Police Department and charged with two firearms offenses and evading arrest. On August 27, 2024, [A.C.] pleaded guilty to "Firearms Not To Be Carried W/O License," and "Carry Firearms Public in Philadelphia." [A.C.] was sentenced on November 1, 2024, to a term of incarceration of 11.5 to 23 months,

credited for time-served, and immediately paroled to house arrest. The house arrest was vacated on January 2, 2025, so that [A.C.] could be returned to New Jersey on the parole violation warrant.

The JJC then analyzed the record, using Rule 3:21-8 and State v. Hernandez, 208 N.J. 24 (2011). It determined that, while Rule 3:21-8 and Hernandez require that "defendants receive credit against all sentences for any time served in presentence custody between arrest and the imposition of a sentence, the Rule and Hernandez do not apply to this matter involving [A.C.]."

A.C. appeals, arguing:

POINT I
THE JUVENILE JUSTICE COMMISSION CANNOT ARBITRARILY EXCLUDE THE 292 DAYS A.C. SPENT IN PENNSYLVANIA'S CUSTODY FROM THE CALCULATION OF HIS ADJUSTED OR MAXIMUM PAROLE END DATE.

POINT II
THE JUVENILE JUSTICE COMMISSION IS RESPONSIBLE FOR CALCULATING AND REVIEWING A.C.'S PAROLE END DATE.

II.

Our well-settled Parole Board jurisprudence gives us the proper standard of review for the JJC's final administrative decision on a parole revocation matter. We review JJC's parole revocation of A.C. deferentially "in light of its expertise in the specialized area of parole supervision . . . ." J.I. v. N.J. State

5

Parole Bd., 228 N.J. 204, 230 (2017) (citing McGowan v. N.J. State Parole Bd., 347 N.J. Super. 544, 563 (App. Div. 2002)). We will not reverse the JJC's decision "unless found to be arbitrary . . . or an abuse of discretion." Pazden v. N.J. State Parole Bd., 374 N.J. Super. 356, 366 (App. Div. 2005) (omission in original) (quoting Trantino v. N.J. State Parole Bd., 154 N.J. 19, 25 (1998)). Unless the JJC "went so far wide of the mark that a mistake must have been made," its decision must not be disturbed. N.J. State Parole Bd. v. Cestari, 224 N.J. Super. 534, 547 (App. Div. 1988) (quoting 613 Corp. v. State, Div. of State Lottery, 210 N.J. Super. 485, 495 (App. Div. 1986)). We apply these principles to the matter at hand.

III.

Plaintiff argues that the clock on A.C.'s parole term continued during the 292 days he spent in Pennsylvania's custody between March 22, 2024, and January 8, 2025, because his parole was not revoked by the JJC panel until January 17, 2025. He contends that "[t]here is simply no authority to toll a defendant's parole term for time spent in detention . . . ." He suggests that until the JJC revoked his parole, he was serving his New Jersey parole term, even while detained in Pennsylvania. We disagree.

N.J.S.A. 30:4-123.65 states:

The duration of time served prior to parole, plus the duration of any time served on parole, <u>less any time after warrant for retaking of a parolee was issued pursuant to [N.J.S.A. 30:4-123.62] but before the parolee is arrested</u>, plus the duration of any time served after revocation of parole, shall not exceed the term specified in the original sentence.

[emphasis added.]

The plain language of N.J.S.A. 30:4-123.65 informs us that the interval between the issuance and execution of a warrant is not to be considered when calculating how much time the defendant has served on their sentence. The record shows that, upon learning of A.C.'s Pennsylvania arrest, the JJC issued a parole violation warrant on March 22, 2024, to secure his return to New Jersey. That warrant was not executed until nearly a year later, January 8, 2025. In our view, plaintiff's argument misses the mark. Pursuant to the clear and unequivocal language of N.J.S.A. 30:4-123.65, A.C.'s New Jersey's parole term was tolled from March 22, 2024, to January 8, 2025, and this time cannot be credited towards his New Jersey parole. The JJC was not arbitrary, capricious, or unreasonable in denying A.C. credit based upon the plain language of N.J.S.A. 30:4-123.65.

We briefly address A.C.'s other claims on appeal.

A-2129-24

First, the record belies A.C.'s claim that he was being held in Pennsylvania exclusively on New Jersey charges. The record clearly shows that A.C. was charged with new gun offenses in Pennsylvania after being released from New Jersey on parole. Indeed, when the JJC issued the warrant for A.C.'s return to New Jersey, Pennsylvania consistently refused to release him to the JJC's custody until after they sentenced him. This outcome is consistent with the Supreme Court's decision in State v. Joe, 228 N.J. 125, 135 (2017).

Next, the New Jersey probation officer's opinion of November 7, 2024 suggesting that Pennsylvania should not release A.C. at that time because of the JJC detainer, has no bearing on our analysis.

Finally, A.C. argues that N.J.A.C. 13:96-2.1, entitled, "Factors affecting parole release dates," gives the JJC discretion to award jail credits for some or all the disputed 292 days. We disagree.

N.J.A.C. 13:96-2.1(a) directs the JJC Executive Director to identify factors to be included in a "standardized juvenile release system designed to incentivize positive behavior and participation in rehabilitative programming among juveniles . . . ." Subsection (a)(2) expressly makes the JJC's parole date adjustments subject to "jail credits awarded by the court," and subsection (b) mandates that the JJC obtain "final approval of the sentencing court" for any

8

parole approval awarded to a juvenile prior to completion of one-third[2] of his sentence. <u>Ibid.</u>

N.J.A.C. 13:96-2.1 is not in conflict with N.J.S.A. 30:4-123.65. It simply establishes a mandate for the JJC to create an incentive-based system for determining parole release dates. Its subsections (a)(2) and (b) acknowledge the independent role of the sentencing court in awarding jail credit, and in some cases, approving the JJC's grant of parole. This section of administrative code grants no authority to the JJC to award jail credits in a manner that interferes with the operation of N.J.S.A. 30:4-123.65.

D TO To the extent we have not addressed any of A.C.'s remaining arguments, we conclude they are without sufficient merit to warrant discussion in a written opinion. <u>See</u> <u>R.</u> 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

---

[2] Court approval of a juvenile's parole is required if the JJC grants parole before one-third of that juvenile's disposition is completed for any first, second, or third-degree crimes. For all other crimes, court approval of a JJC grant of parole must be obtained if the grant takes place before completion of one-fourth of the juvenile's disposition.

A-2129-24